In re TAXPAYERS & FREEHOLDERS OF VILLAGE OF PLATTSBURGH.

(Supreme Court, Appellate Division, Third Department. March 2, 1898.)

1. APPEAL AND ERROR—DECISIONS REVIEWABLE.

On appeal by village officers in a proceeding before a justice of the supreme court for a summary investigation of the financial affairs of the village, the order of the justice restraining the payment of specific claims, together with his decision on the legality of expenditures already made and debts contracted by the officers, will be reviewed.

2. MUNICIPAL CORPORATIONS—EXPENDITURES—LIMITATION.

Laws 1890, c. 322, tit. 7, § 1, authorizes town trustees to raise by taxes annually certain sums for specified purposes. Section 3 prohibits the creation of any debt except ordinary expenses within the income of the current year applicable to that purpose. Section 9 empowers the trustees to apply any excess in one fund to any deficiency in another. *Held*, that the trustees were limited in their expenditures for a certain purpose to the amount appropriated therefor, and such amount could not be increased by the addition of any excess in another fund, or by using fines and fees collected.

3. SAME.

Nor can claims contracted one year be paid out of funds raised and appropriated for another year.

**4. SAME—AUDIT OF CLAIMS.**

Where claims against a town are not audited by the trustees until after they have been paid by the treasurer, there is a substantial, and not merely a technical, violation of the statute requiring such audit to be made prior to payment.

**5. SAME—LIMITATION ON INDEBTEDNESS.**

Laws 1890, c. 322, tit. 7, § 3, prohibiting the borrowing of money, or the incurring of any debt by a town, except for ordinary expenses within the income of the current year applicable to that purpose, forbids absolutely the contracting of debts for which no appropriation has been made.

**6. SAME—POWERS OF TOWN TRUSTEES—DELEGATION.**

The power conferred by statute on town trustees to order the construction of sewers cannot be delegated to a committee.

**7. SAME—SEWERS—ESTABLISHMENT—PROCEDURE.**

The statute provided that the construction of streets and sewers in a town should be by order of the trustees, the land to be first acquired; that part of the expense should be paid by special assessments for benefits; that all claims against the town should be audited by the trustees before being paid; and that a notice of the meeting at which the construction of sewers was to be considered should be given. *Held*, that the trustees were not relieved from complying with the statute by a resolution of the board of health, reciting the need of sewerage, and resolving that the matter be brought before the trustees with a request for action thereon, such resolution being a recommendation merely, and not an order for the construction of the sewers.

**8. SAME—DEFECTS CURED.**

Nor was a failure to comply with the statute cured by a subsequent deed to the town of the land where the streets and sewers were constructed.

**9. SAME—CLAIMS—INTEREST OF OFFICER.**

Where a member of a board of health furnishes goods from his own store to persons quarantined by that body, and afterwards participates in the audit of his own bill, his claim is illegal.

**10. SAME—INDEBTEDNESS—POWERS OF TRUSTEES.**

Under Laws 1890, c. 322, tit. 7, § 1, subd. 7, empowering town trustees to raise a certain sum by tax for contingent expenses and other general purposes, and subdivision 8, providing that special sums could be voted by the electors for special purposes, where the trustees contemplate submitting to the electors the question of erecting a town house, they can hire an architect to draw plans therefor, and his claim for services will be valid.

**11. SAME.**

Under Laws 1890, c. 322, tit. 4, § 5, subd. 20, authorizing town trustees to employ an attorney when the business of the board or village requires it, the trustee can employ counsel to appear before the legislature and governor in relation to any law pertaining to the town, and his claim for services will be valid.

**12. SAME—FINANCIAL AFFAIRS—INVESTIGATION—ACCOUNTANTS.**

Under Laws 1892, c. 685, authorizing the justice to whom application for a summary investigation into the financial affairs of a village is made, to appoint expert accountants, it is no objection to the competency of such expert, or to the use of his report for reference in giving testimony, that he signed the application as a taxpayer.

**13. APPEAL—REVIEW—FINDINGS OF FACT.**

On appeal in a proceeding before a single justice of the supreme court for a summary investigation into the financial affairs of a village, his finding as to the amount expended for a certain purpose should not be disturbed where there is evidence to support it.

**14. COSTS—RETAXATION ON APPEAL.**

An application for a summary investigation into the financial affairs of a village, as provided for in Laws 1892, c. 685, being a special proceeding, the amount of costs therein is regulated by Code Civ. Proc. § 3240, by which they are left to the court's discretion, and the method of their retax-

ation by section 3264, which provides for a motion therefor in the lower court, so that a retaxation cannot be had in the first instance on appeal.

15. SAME—LIABILITY TO COSTS.
Laws 1892, c. 685, § 3, provides that costs in a proceeding for the investigation of the financial affairs of a village shall be taxed against the officers whose expenditures are investigated. Laws 1890, c. 322, tit. 4, §§ 1, 5, make the president of the village a trustee, and give the trustees control of the village finances. He is also required to countersign all drafts drawn by the clerk. *Held*, that the president was properly chargeable with his share of the costs.

Parker, P. J., and Merwin, J., dissenting.

Appeal from special term.

Application before a single justice of the supreme court by the taxpayers and freeholders of the village of Plattsburgh for a summary investigation into the financial affairs of said village. From a decree of the justice the president and other officers of the village appeal. Modified.

In February, 1897, an affidavit was presented to a justice of the supreme court, verified by some 27 freeholders of the village of Plattsburgh, upon which an application was made for a summary investigation into the financial affairs of such village pursuant to section 3 of chapter 685 of the Laws of 1892. The application was granted by the justice, and a time fixed for the hearing, and evidence was taken which resulted in the decree or order from which this appeal is taken; the appellants being the president, treasurer, trustees, and two former trustees of said village. At the close of the hearing the justice rendered a decision, the substantial portions of which are fairly epitomized in the appellants' statement of facts, as follows: "(1) That under the village charter taxes raised for current expenses in one year could not lawfully be used to pay indebtedness created in a prior year. (2) That there was paid in 1896 in discharge of indebtedness incurred in 1894 and 1895 the sum of $5,556.18. (3) That there was paid out of the treasury in 1895 for sewers and drains, $4,800.83, while $3,000 only was applicable to such purpose. (4) That there was paid out of the treasury in 1896, $8,477.66 for streets and sidewalks, while only $7,500 was applicable thereto. (5) That there was taken from the treasury for general use the general fund, $5,978.85, while only $4,770.63 was applicable thereto. (6) That there were outstanding unpaid bills against the village to the amount of $11,170 of which $5,110.35 were for bills contracted by the board of health. (7) That $24,229.75 had been paid out by the village upon claims never audited by the board of trustees. Of this amount $5,406.49 was for salaries and $480 for interest on bonds. (8) That in 1896 two new streets were laid out and constructed called Sherman and Grant streets, respectively, having a length of about fifty rods, and costing about $1,800, upon land not owned by the village. (9) That six sewers, each exceeding twenty rods in length, were constructed without authority of law. (10) That in 1895 a note of $1,388.12 was made by the president and treasurer, and paid (without order of the board of trustees) in 1896, together with $83.30 interest thereon. (11) That in March, 1896, the trustees authorized the president and clerk to borrow $5,000 to pay bills past due, and for current expenses, and that the same was paid August 10, 1896, with $150 interest thereon. (12) That in October, 1876, there was unlawfully paid $162 to M. A. Diaz for plans and specifications for a town house. (13) That there was paid to Judge Sheldon and Mr. Wheeler $223.60 for services as attorneys for appearing before committees of the legislature and the governor in urging the passage of a law to bond the village $50,000 for various proposed improvements. (14) That in April, 1896, a bill of the board of health of $3,500.35 was audited by the trustees, and that such bill contained an item of $105.50 which was illegal, for registration of births, marriages, and deaths, and that such bill also contained an illegal bill of $1,532.88 for groceries furnished by the board of health to different persons while under quarantine." Upon such findings and conclusions the justice made an order enjoining and forbidding the payment by the treasurer of said village—First, of the sum of $105.50 for the registration of births, marriages, and deaths:

second, the sum of $1,532.88 for supplies furnished to persons quarantined; third, payment of any sum of money raised by taxation for the current year of 1897 upon claims or indebtedness created in 1896 or any prior years, and from the payment of any warrant upon any fund after he has paid out the sum allotted by law or fixed by the board of trustees for such fund; fourth, enjoining and restraining them from paying any of the expenses of this investigation. The justice taxed the costs and expenses for the investigation at the sum of $778.75, which sum he stated as including attorney and counsel fees employed by the taxpayers named in the affidavit, and directed that such costs be paid by the appellants herein. From such findings, orders, and injunction this appeal is taken.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Wheeler & Woodward (E. T. Brackett, of counsel), for appellants.
Wm. L. Pattisson (Royal Corbin, of counsel), for respondents.

HERRICK, J. We are asked to review upon this appeal not only that portion of the justice's decision in which he enjoins the officers of the village of Plattsburgh from paying certain specific claims or parts of claims, but also to review his decision in regard to alleged illegal payments made, or liabilities incurred and now outstanding against said village, because, as it is claimed, his findings and decisions in relation thereto will be conclusive upon the defendants in the event of any proceedings being taken against them to cause them to pay into the village treasury the moneys thus found by the justice to have been illegally paid by them, or, in the event of any proceedings being taken against them, to compel payment of the bills found by him to have been illegally contracted, and now outstanding and unpaid. The record is quite voluminous, and the items and claims passed upon by the learned justice are many, but I shall content myself with reviewing only those embraced by the appellants in their statement of facts as above set forth. It will be observed that they may be classified under several heads: First, moneys paid in excess of the amounts appropriated; second, bills contracted in one year, paid out of funds raised and appropriated for another year; third, claims paid without being audited; fourth, liabilities and claims contracted, for which no appropriation had been made, or in excess of the amount appropriated therefor; fifth, moneys paid for streets not opened, or land therefor acquired by the village, and for the construction of sewers, without authority of law; sixth, illegal items contained in bills of the board of health; seventh, bills paid for services, the rendition of which the village officers had no power to authorize.

To enable us to determine the questions thus raised it will be necessary to resort to the statute under which the village of Plattsburgh is incorporated, and see what powers are granted to it and its officers in the raising and expenditure of moneys. Like all charters of municipal corporations, it is provided that the major portion of the expenses of maintaining the village government shall be raised by taxation, and by section 1, tit. 7, c. 322, Laws 1890, it is provided that the board of trustees may raise by taxes annually the following sums of money:

"(1) A sum sufficient to pay all installments of principal and interest on the bonded debt of the village of Plattsburgh, except as may be otherwise pro-

vided for. (2) A sum sufficient to pay any judgment recovered against the village. (3) A sum sufficient to refund the taxes collected on erroneous assessments. (4) A sum sufficient to pay the current expenses of the fire department not exceeding one thousand dollars. (5) A sum sufficient to pay the current expenses of maintaining streets, sidewalks, and public grounds not exceeding seven thousand five hundred dollars. (6) A sum sufficient to pay for building, laying and maintaining sewers and drains not exceeding one thousand dollars. (7) A sum sufficient to pay the salaries of the officers of said village, contingent expenses and other general purposes not exceeding three thousand five hundred dollars. (8) Such further sums for special purposes as shall have been duly authorized by vote as provided in the next section."

Standing alone, this would indicate an intention to provide for annual expenditures by annual appropriations and taxation, the appropriations of each year to take care of the expenses of that year. Also that it is a limitation upon the authorities of the village as to the amount they are permitted to expend, because it must be assumed that, when the legislature limited them as to the amount they might raise for a specific purpose, they thereby also limited them as to the amount they were at liberty to expend for that same purpose. This construction is confirmed by the provisions of section 3 of the same title, reading as follows:

"Money cannot be borrowed on the credit of the village; nor can any debt or liability be incurred by the village, except for the ordinary expenses of the village within the income of the current year applicable to that purpose. Any officer or person who shall assume to create a debt or liability, or appropriate any money or property of the village, contrary to the provisions of this act, or shall assent thereto, shall be personally liable for such debt or liability, and to the village for such money or property. Each trustee present when such violation shall have been ordered, shall be deemed to have assented thereto, unless his dissent shall be expresed and entered on the journal. Any willful violation of this section shall also be a misdemeanor."

This constitutes an absolute prohibition against the expenditure for any purpose of any more than has been appropriated for that purpose, and also against incurring any debt or liability in excess of that amount. This confines the expenses of each year to the amount appropriated for that year. The appellants claim, however, that they are not limited in their expenditure to the amounts specified in subdivisions 4, 5, and 6 of section 1, above quoted, for the purposes specified in such subdivisions, respectively, but that they may increase the amounts specified in any one of those funds by transferring from another fund; citing as authority therefor that portion of section 9 of title 7 which reads as follows:

"The trustees shall have power whenever there shall be any excess of money in any one fund raised by taxes, to apply any such excess to supply any deficiency that may exist in any other fund."

In the answer made by them to the affidavit presented to the justice, they alleged that after expending the sum of $7,500 for the maintaining of the streets and sidewalks for the year 1896 they found that there was a large amount of work necessary to be done in order to put the streets and sidewalks in a passable and safe condition; and they found that there was an excess in the general fund, and that they applied sufficient of that excess in the general fund, transferring the same to the street fund, for the purpose of making such repairs. And a similar allegation is made as to the transfer from other funds to the

sewer fund.    Such a construction of the statute is not permissible.    To allow it would defeat one of the purposes of the statute.  .I do not think that, where more money is raised for a specific purpose than that purpose requires, the excess can be added to the amount authorized by law to be raised for any other purpose.    If the prohibition of section 3 is observed, then there will be no expenditure for any purpose in excess of the amount appropriated for that purpose, and there will be no occasion for a transfer of money from one fund to another.    The construction of the word "deficiency" contended for by the appellants provides a way for evading the provisions of section 3, and, if upheld, we will have a statute one section of which positively prohibits the doing of certain things, and another section pointing out how such prohibition can be evaded.    Deficiency is defined to be the "lack of a part."    Worcest. Dict.    In this case there was no part of the fund lacking.    It may have been insufficient, but it was all raised, and all in the treasurer's hands.    It will be observed that the statute provides for a deficiency in the "fund," not in the appropriation which makes up that fund.    Insufficiency of the appropriation for the purpose of which it is made does not constitute a deficiency in the fund created by the appropriation.    The only reasonable construction to be given the word "deficiency," as used in section 9 of title 7, is where the tax imposed has not resulted in raising the amount authorized to be raised by the board of trustees.    Where there has been an amount expended, or contracted to be expended, for a specific purpose in excess of the amount appropriated for that purpose, the excess so expended or contracted for is not a deficiency, within the meaning of the statute.    To hold otherwise would practically destroy the limitation upon expenditure evidently intended by this act.    To illustrate:  By subdivision 6 of section 1 of title 7 the trustees are limited in the amount that they may raise by taxation for the building, laying, and maintaining of sewers and drains to an amount not exceeding $1,000. By other subdivisions they are authorized to raise for specific purposes amounts which are not limited, and which, in the nature of some of the cases, will have to be estimated.    They might estimate one of those sums at say $10,000, and find that they only needed one, and upon the theory contended for they could add the $9,000 which they had raised in excess of what they needed to any of the funds provided for by subdivisions 4, 5, and 6, and the annual tax budget presented by the village authorities to be raised by tax would be like the unbalanced bids sometimes made by contractors.    It appears from the examination of the president that $1,000 was raised by special . vote for fire purposes, in addition to the $1,000 provided for by subdivision 4 of section 1, presumably pursuant to section 2 of title 7, and that the $1,000 so raised by special vote was transferred to the general fund; and, as we have seen, the appellants claim that, there being an excess in the general fund, they transferred a portion to the street fund, to meet the expenditures upon streets in excess of the appropriations for street purposes.    Of course, they had no right to make this transfer, because there was no deficiency in the general fund.    They claimed there was an excess in that fund, and therefore made a transfer from it to the street fund.    Was that excess caused by the transfer

from the fire fund? Raising money for one purpose and using it in this manner for another is deluding and misleading the taxpayers, and is in violation of the statute. If I am right in my construction that the legislature intended to limit the village authorities in their expenditures for the purposes enumerated in subdivisions 4, 5, and 6 to the amounts therein specified, respectively, then they have no right to add to the amounts therein specified, either by transferring from other accounts or by using the fines and license fees collected, and that conclusion disposes of that class of expenditures found by the justice to have been made in excess of the amounts appropriated.

The next to be considered is where claims contracted one year have been paid out of funds raised and appropriated for another year. This is practically disposed of by the previous discussion. If the provisions of section 3 of title 7 are lived up to, there can be no outstanding claims. Each year's expenses and indebtedness will be taken care of by each year's appropriations. That section prohibits borrowing by the village officers. It also prohibits the incurring of any debt or liability except for the ordinary expenses of the village within the income of the current year. Paying the debts contracted one year out of the appropriations made for the expenses of another year will completely nullify the manifest intent of the statute to confine the expenses of the village for each year to the amount appropriated for that year. It is a legalization of the acts of the village officers in violating the law; for, if they had not violated the law by expending, or contracting to expend, more than had been appropriated, there would be no indebtedness of a prior year.

The next class to be considered is that where bills against the village were paid without having been audited. The statute requires the audit by the board of trustees of all claims against the village prior to their payment by the treasurer. This is conceded by the appellants, and it is also practically conceded that the statute in that respect has not been followed; but it is claimed that the violation of the statute is only a technical one, and that the village has not been injured by it. It appears that many claims were paid by the treasurer, and never passed upon by the board of trustees until they examined the treasurer's accounts at the end of the year, and that then, in examining his vouchers for moneys paid out, they passed upon such claims; and it is claimed that passing upon and approving his accounts at that time was practically an audit of the claims. Assuming that such action was, in a sense, an audit of the claims, it should need no argument to convince any one that the payment of a claim first and the ascertainment of its legality and correctness afterwards is a grossly improper way of paying out the public moneys, even if there was no statute regulating the matter. Here there is a statute, and the method pursued is directly the reverse of that provided for by the statute. It is not a mere technical violation of the law. All provisions of law enacted to protect our public treasuries are matters of substance, and a violation of any of them is a substantial, and not a technical, violation of law. It may be that in this particular case the village has not suffered, but we do not know. We can readily understand that an account that has been paid will not, in many cases, be

subjected to the same rigid scrutiny as one that has not. This practice inevitably leads to looseness in the examination of claims against the village, and invites the presentation of illegal, improper, and extravagant claims, and that sooner or later result in plundering the treasury. It is a method of transacting the public business that cannot be too strongly condemned.

The next class to be considered is that of liabilities and claims contracted, for which no appropriation has been made, or in excess of the amount appropriated therefor. There is no need of discussing this. Section 3 of title 7 absolutely forbids the contracting of debts for which no appropriation has been made, or in excess of the appropriation for the current year, and made no further explanation.

The next claim to be considered is that of moneys paid for streets not opened, or lands therefor acquired by the village, and for the construction of sewers without authority of law. It appears that two streets were laid out and constructed without any resolution or ordinance having been passed by the board of trustees, providing therefor, and without the land having been previously acquired; and no part of the expense of the work appears to have been raised from or paid by an assessment upon the property benefited, as the law requires, but paid from the village treasury, and without being previously audited by the board of trustees. Not a single requirement of the statute in regard to the opening, laying out, and improvement of the streets, and of paying the expenses therefor, seems to have been complied with. Section 31 of title 8 of the statute provides, among other things, as follows:

"Whenever the board of trustees shall intend to make and construct any of said drains or sewers exceeding twenty rods in length, they shall, before ordering the same, cause a notice of such intention to be published for two weeks successively, in one or more of the newspapers published in said village, stating the time when and the place where said board will meet to act thereon. At such meeting or at such adjourned or subsequent meeting as they shall order said hearing to be had, they shall hear such reasons as shall be given for or against the same."

This statute was not complied with. Neither does it appear that the board of trustees ever authorized the construction of the sewers, but the work was apparently done under the direction and by the authority of the sewer committee, or of the chairman of that committee. The statute confers no such power upon a committee of the board of trustees. The power to order the construction of sewers is conferred upon the board of trustees. In this case they did not attempt to delegate their authority to the committee, and, if they had, it would have been nugatory. The power conferred is one involving the exercise of judgment and discretion, and cannot be delegated. In re Emigrant Industrial Sav. Bank, 75 N. Y. 388–393. The expense of constructing these sewers appears to have been paid from the village treasury without being previously audited by the board of trustees, and no part of such expense was provided or paid for by assessments upon the property benefited. It was claimed upon the part of the appellants that these sewers were constructed by order of the board of health, and that that relieved them from complying with the requirements of the statute. I can find no evidence that these sewers were

constructed either by the order of the board of health or under their authority and direction. The most that appears is a recital by them of the condition of the localities where the sewers were laid, and the need of sewerage, followed by a resolution reading as follows:

"Resolved, that the matter be brought to the attention of the board of trustees with the urgent request that suitable remedies be applied at once."

So that these sewers were not constructed under the authority, or even by the direction, of the board of health, but at the most upon their recommendation, and this recommendation could be and should have been carried out in the manner provided by law for the building of sewers. The deed of the ground where the streets were laid out, and where some of these sewers, or portions of them, were laid, was given to the village after the streets had been laid out and constructed. While that vests the title to the land in the village, it does not otherwise secure the violation of law by the trustees in laying out such streets or constructing such sewers in disregard of the statute, or in paying the expense of these improvements to private lands wholly out of the village treasury, instead of paying it, or a portion of it, out of assessments upon the property benefited, as the statute requires. All the provisions of the statute that I have so far considered are evidently intended for the protection of the taxpayers,—to prevent waste and extravagance, and to limit the amount that can be raised or expended for village purposes,—and they should be strictly construed to carry out that purpose and intent.

The next to be considered are alleged illegal items contained in bills of the board of health. The item of $211 for registration of births, marriages, and deaths the justice found to be an overcharge to the amount of $105.50, and his finding in that respect does not appear to be questioned by the appellants. Another item is $1,532.88 for groceries furnished by a member of the board of health, by direction of the board of health, to different persons and families while isolated in their own dwellings by direction of the board of health, because they had, or had been exposed to, some infectious disease. This expenditure I understand to have been, not for medicines or anything in the nature of medicines, but for food for the ordinary maintenance and support of such persons and families. The following is part of a bill for supplies furnished to one of the persons quarantined:

"One-half cord of wood, $2.25; cartage, 25 cents; paid woman for washing clothes, $2.00; one bottle of cod liver oil; one bottle pickles, 25 cents; 3 lbs. of rice, 24 cts.; 1 doz. eggs, 20 cts.; 2 meat, 20 cts.; 2 cans tomatoes, 20 cts.; 2 cans corn, 20 cts.; one sack of something, 30 cts.; 1 mug of mustard, 10 cts.; 1 bottle catsup, 25 cts.; 1½ lb. cheese, 23 cts.; 1 can strawberries, 25 cts.; 3 doz. c. pins, 12 cts.; 4½ lbs. beefsteak, 63 cts.; 5 lbs. trout, 40 cts.; 1 qt. syrup, 13 cts.; 2 lbs. butter, 50 cts.; 4 lbs. sugar, 24 cts.; 1 doz. eggs, 18 cts."

It is claimed on behalf of the appellants that these bills for supplies were properly contracted for by the board of health, and audited by the board of trustees under the public health law, being chapter 661 of the Laws of 1893, with its amendments. See Banks' Rev. St. (9th Ed.) p. 787 et seq. The respondents claim that it is no part of the duty of the board of health to furnish provisions to isolated persons; that, if such persons are needy, the proper officers to supply their

wants are the poor authorities of the town.    We are not required, however, to pass upon that question, for it appears that such provisions were furnished by a member of the board of health out of his own store, and he participated in the audit of his own bills.    This is more than a mere impropriety; it is a positive illegalty.    A member of the board of health is a public officer and trustee for the public, and has no right to deal with himself.    His claim for articles furnished is disposed of by the cases of Smith v. City of Albany, 61 N. Y. 444; Beebe v. Supervisors of Sullivan Co., 64 Hun, 377, 19 N. Y. Supp. 629.    See, also, Pen. Code, § 473.

The next class of expenditures are those claimed to have been made utterly without authority of law; one item being money paid to an architect for drawing plans and specifications for a town house; and the other being the payment of attorneys for appearing before committees of the legislature, and before the governor, and urging the passage of a law to bond the village to pay for various proposed public improvements.    I find more embarrassment in dealing with these items than with those heretofore considered.    At the time when the plans and specifications for the town house were drawn up, no town house had been authorized to be erected.    It was contemplated to submit the question of building a town house to the electors of the village.    The statute, in providing for what purposes money may be raised, provides (see subdivision 7, § 1, tit. 7) for including an amount for "contingent expenses and other general purposes," thus recognizing the fact that there come up from time to time matters not foreseen at the time of making up the budget, and therefore not expressly provided for, and recognizing also the fact that in the administration of every municipal government there are incidental matters of business administration and expenses that are not expressly provided for in the statute, but that must be met.    The provisions in subdivision 8 of this same section, by which money may be raised for special purposes, such special purposes to be passed upon by the electors, may also fairly be taken into consideration in determining that the village may go into some matters of public concern not expressly authorized by its charter; and the procuring or erection of buildings wherein its officials may be housed, and the public business transacted, is one not at all foreign, but incidental, to the purposes of a municipality; and in submitting the proposal to the electors as to whether such a thing shall be done, an estimate of the probable expense is certainly proper, if not necessary, in order to enable them to pass intelligently upon that question.    Of course, the probable expense cannot be estimated unless there are plans and specifications of the building proposed to be erected.    Who shall prepare them, and who meet the expense?  Shall it be left to the enterprise and public spirit of a private citizen or citizens, or can it not fairly be said to be incident to the powers and duties imposed upon the municipality, and to be paid out of the fund raised for contingent and general purposes?    The board of trustees, by subdivision 20, § 5, tit. 4, is authorized "to employ an attorney and counsel when the business of the board of trustees or the village requires, either by the year or otherwise, and to pay him a reasonable compensation."    Under that provision of the statute, had the trustees

power to employ counsel to appear before committees of the legislature and the governor in relation to any law or laws pertaining to the village? The general care of municipal affairs is intrusted to the officers of the municipality, and the initiating and providing for public improvements, or proposed public improvements, I think is within their province. While individual citizens are not barred from setting them on foot, but should be encouraged to do so, yet, in the nature of things, they are left very largely to the municipal authorities; and, even when initiated by the enterprise or intelligence of the citizen, his first effort is to put the municipal officers in motion, and, if they find that their powers in that respect are limited or entirely withheld by the statute, it is perfectly proper for them to apply to the legislative power of the state for authority. This power or right, it seems to me, is incident to the general powers of government conferred upon them. The presentation of the merits of bills, or the necessity or propriety of legislation to committees of the legislature and to the governor, is legitimate employment for attorneys and counsel. It is a matter that requires skill and address.

The presentation and preparation of bills to the legislature by and on behalf of municipal authorities, to bring about needed or supposed needed improvements, or to obtain further powers for the making of public improvements, as well as opposing the passage of bills believed by the municipal authorities to be inimical to the interests of the municipality, is of constant occurrence of late years; and some of the larger municipalities of the state keep some representative from the law department of such municipality in almost constant attendance upon the sessions of the legislature, presenting and explaining to the legislature bills proposed and legislation asked for by the municipality, and watching legislation prepared by others, and calling the attention of the legislature to proposed improvident or unnecessary acts of legislation affecting their respective municipalities; and I think such watchfulness over legislation prepared bv others, and such attention to and furtherance of that which is deemed needful by the municipal authorities, has come to be regarded as a very proper, and, indeed, necessary, part of the functions of the law department of a city. There is no specific authority given authorizing them to send their law officers to attend upon the legislature, or to pay their expenses for so doing; but it is regarded, and I think fairly so, as incident to the powers and purposes of the municipality. It seems to me, therefore, that in this case, the village having power to employ counsel "when the business of the board of trustees of the village requires," it might legitimately employ them for the purpose heretofore specified, and their "reasonable compensation" for such service would be a legal claim against the village. No question apparently being raised as to the reasonableness of the bills of the architect and of the counsel employed, it seems to me that the decision of the justice as to them should not be sustained.

The appellants also complain of the reception by the justice of a statement of accounts of the village, made by one Newton. The statute which authorizes investigations of this kind also authorizes the justice before whom the investigation takes place to appoint ex-

perts. Mr. Newton was appointed by the justice in this case, and upon the coming in of his report the appellants objected to its being received, upon the ground that he was one of the taxpayers who signed the affidavit upon which this proceeding was based, and was, therefore, personally interested in the result, and. therefore, not a competent and proper party to act as an expert. The fact that Mr. Newton was one of the taxpayers who requested the investigation to be made, and signed the necessary affidavit, goes to his credibility and reliability, but not to his competency. His appointment was purely a question of propriety, which the justice making it could alone pass upon. For aught we can tell, he may have been the best and most available man in the locality to conduct such an inquiry. His statement or report was not received, however, as evidence, but he was sworn as a witness, gave testimony. and used the report to refer to, and it was received as a summary for the use of the court as to what he had found, and as to what he had testified to. I can find no reversible error either in his appointment or in the use that was made of his report.

No criticism is made by the appellants as to the accuracy of the amounts found by the justice to have been expended, contracted for, audited, or paid, except as to the amount found by him to have been paid out for streets improperly opened and improved. There is evidence to support the findings of the justice in that behalf, and it should not be disturbed.

I think I have now considered all the questions raised by the appellants as to the investigation itself, or as to the conclusions of the justice therefrom. But the appellants also complain of the allowance of costs, both as to the amount and the manner of allowance. We have heretofore held this proceeding to be a special proceeding. 22 App. Div. 176, 47 N. Y. Supp. 1023. The amount, therefore, is regulated by section 3240 of the Code of Civil Procedure. The appellants claim that the costs were taxed without notice to them, and I can find no record of any notice of taxation or retaxation in the appeal book. The remedy for taxation without notice is not with us in the first instance, but is provided for by section 3264 of the Code of Civil Procedure. In addition to the objection made by all the appellants to the taxation of costs, the appellant Guibord claims that he should not be chargeable with any of the costs of these proceedings, that he is not a trustee of the village, and has not expended its money. The statute (section 3, c. 685, Laws 1892) provides that the costs incurred in the investigation shall be taxed by the justice, and paid upon his order, "by the officers whose expenditures are investigated." Guibord is, and was during the time of the expenditure complained of, and at the time of this investigation, president of the village. The president of the village is a member of the board of trustees. Laws 1890, c. 322, tit. 4, § 1. It is also provided by section 5, same title, that the trustees shall have the management and control of the finances of the corporation. That does not mean the trustees individually, but as a board, and of that board the president is one. It is their management of the finances that has been investigated, and in investigating their conduct as a board the conduct of the president as a member of the board

is necessarily involved. It may be true that he has not personally paid out any of its money. That does not relieve him. Greater responsibility, perhaps, rests upon the president than upon any other officer of the village for its expenditure. No bill can be paid by the treasurer except after an audit by the board of trustees, of which board he is a part, and then only upon a draft drawn by the clerk and countersigned by the president; that is, it is verified and certified to the treasurer by the president. He is the last guard in the entry to the treasury. The officers who incur the liability, or who direct it to be paid, as well as the one who actually delivers the money in payment, are all parties to the expenditures, unless voting or protesting against them, and are "the officers whose expenditures are investigated," within the meaning of the statute. It seems to me that there is every reason why the president should be charged with the others, and none for his exemption.

I therefore conclude that the determination and findings of the justice, with the exceptions of those referring to the claims of $162 for drawing plans and specifications for a town hall, and of $223 compensation of attorneys for appearing before committees of the legislature and the governor, should be in all things approved, and the order entered thereon affirmed, with costs of this appeal against the appellants.

LANDON and PUTNAM, JJ., concur.

MERWIN, J. (dissenting). The question before us upon this appeal is not, I think, whether the opinion or report delivered in the proceeding was in all its statements or items correct, but the question is whether the order that was made was proper under the circumstances shown to exist. The power of the justice to make any order is limited by the statute, and this limitation was evidently in mind when the order was made. By the terms of the order, the claim of the board of health for $3,510.35 which the board of trustees had ordered paid was reduced by the sum of $105.50 for excessive and unlawful registration charges, and the payment of such $105.50 restrained. The payment of another portion of said claim, being an item of $1,552.88 for groceries furnished by H. W. Guibord, a member of the board of health, was restrained until the final determination of a trial of said claim upon the merits in some competent court. The treasurer of the village was restrained from the payment of any money raised for the current expenses of the year 1897 upon claims or indebtedness created in 1896, or for any prior years, and "from the payment of any warrant upon any fund after he had paid out the sum allotted by law or fixed by the board of trustees for such fund." The board of trustees were restrained from allowing or directing paid from the village treasury any portion of the expenses of the proceeding. This is the substance of the order, aside from its provisions charging the officers individually with the costs, and fixing the amount, and providing for the publication and service of the report. The facts and circumstances that were shown justified, I think, the order, and it should be affirmed.

PARKER, P. J., concurs.