THE CITY AFFAIRS COMMITTEE OF JERSEY CITY, A
BODY CORPORATE, PROSECUTOR-APPELLANT, v. THE
BOARD OF COMMISSIONERS OF THE CITY OF JERSEY
CITY AND THE CITY OF JERSEY CITY, A MUNICIPAL
CORPORATION, DEFENDANTS-RESPONDENTS.

Argued October 16, 1945—Decided March 14, 1946.

For the appellant, *Leo Rosenblum.*

For the respondents, *Charles A. Rooney (Charles Hershen-stein,* of counsel).

The opinion of the court was delivered by

HEHER, J.   We hold the view that a municipality may law-fully publicize, at public expense, what its governing body conceives to be sound reasons, relating to the essential local

welfare, for the rejection by the people of the state of proposed amendments to the constitution.

The power to take reasonable measures to conserve their own vital interests is incident to the general powers of local government conferred upon the municipalities. The right of advocacy and defense of the communal welfare in the state legislative forum has long been accorded general recognition. *Smathers* v. *Board of Chosen Freeholders of Atlantic,* 113 *N. J. L.* 281; *In re Carrick,* 127 *Id.* 316; *Farrel* v. *Town of Derby,* 58 *Conn.* 234; 20 *Atl. Rep.* 460; *In re Taxpayers and Freeholders of Plattsburgh,* 27 *App. Div.* 353; 50 *N. Y. Supp.* 356; *Bachelder* v. *Epping,* 28 *N. H.* 354; *Meehan* v. *Parsons,* 271 *Ill.* 546; 111 *N. E. Rep.* 529; *Denison* v. *Crawford County,* 48 *Iowa* 211; *Arthur* v. *Dayton,* 4 *Ky. Law Rep.* 831, (1883); *Powell* v. *City and County of San Francisco,* 62 *Cal. App. R.* (2d) 291; 144 *Pac. Rep.* (2d) 617. If it is the local government's legitimate province to challenge judicially, at public expense, the constitutionality of legislative enactments which adversely affect the local interest, and this cannot but be conceded, its right of opposition within reasonable bounds before the event cannot be doubted. And, *a fortiori,* a municipal government may invoke reasonable measures to apprise the state electorate, for its information and guidance in the referendum election, of the probable impact of the adoption of suggested alterations in the state's organic law upon the local economy. For obvious reasons, changes in the fundamental law are of much more serious import than transitory legislative enactments. And it does not matter that the municipality is merely a creature of the legislature; that does not serve to deprive the collective unit of the right of self-advancement and self-protection by reasonable and legitimate means fairly incident to its general powers and not in opposition to specific legislative directions. Such is of the very essence of the power of local self-government. Its complete subordination to the state, subject to constitutional restraints, does not render it incapable of serving the common interest in local affairs, within the allotted sphere of action. As stated in *Farrel* v. *Town of Derby, supra,* "The right of self-defense is well nigh universal," and the

municipalities "are not exceptions to the rule." After all, the municipality is a body politic composed of the individual inhabitants within its corporate confines for the regulation of the internal affairs of the community, and the service of the civil government of the state; and it would be illogical to hold that a right which concededly resides in the individual cannot be exercised in the aggregate through those elected to administer the local government, where demanded by the common interest. Would a submission of the city's cause to a state-wide audience by radio be beyond its corporate powers? We think not. Yet the written word affords opportunity for analysis and thoughtful consideration and, therefore, more intelligent understanding of the issues, which ordinarily are not free from complexity when they involve changes in the state's organic law.

While a municipal corporation is a government of enumerated powers, acting by a delegated authority, it possesses also such rights as arise by necessary or fair implication, or are incident to the powers expressly conferred, and such as are essential to the declared objects and purposes of the municipality. *N. J. Good Humor, Inc.,* v. *Bradley Beach,* 124 *N. J. L.* 162. *Vide R. S.* 40:48–2, 40:72–3. Jersey City is in the latter statutory category. By that section, it is invested with "all the powers necessary for its government not in conflict with the laws applicable to all municipalities or the provisions of the constitution * * *." Generally, a public purpose has for its objective the promotion, *inter alia,* of the "general welfare, security, prosperity, and contentment of all the inhabitants or residents" of the municipality; and the determination of what constitutes a public purpose is primarily a legislative function, subject to review and correction by the courts only when the action taken is arbitrary or capricious. 37 *Am. Jur.* 734, 735. To uphold the resolution under review is not, of course, to imply judicial concurrence in the character and fitness of the advertisements or the strictures and criticisms therein contained. The question before us is the existence *vel non* of the power represented by the resolution, not the propriety of the things done in its exercise. All the reasons assigned for error in the Supreme Court are

directed to the validity of the resolution itself, *i. e.*, the existence of the power, and not to the manner of its exercise. Neither the content nor tone of the advertisements is determinative of the validity of the resolution; nor does the validity of the exercise of the power conferred by the resolution depend upon conformance with judicial concepts of sound and wise policy or fair and temperate advocacy. Extravagance of statement does not serve to invalidate the exercise of the power. Censorship is not of the judicial function. Where the action taken is not clearly capricious, the local legislative body is accountable only to its constituency.

As with other powers, the exercise of the particular power is circumscribed by reason. Here, the subject-matter involved fundamental principle and policy deemed vital to the community-at-large; and we entertain no doubt that the challenged action was a legitimate local function.

We are thus brought to a consideration of the question of whether the expenditures so made are fairly comprehended in the appropriation of the then current year for "Railroad Tax Litigation."

The city urges that the point is moot, since full payment of the advertising bills has been made, and the writ would be "inefficacious and valueless," and was therefore properly dismissed. The cases of *Jersey City* v. *Traphagen,* 53 *N. J. L.* 434; *Hoboken* v. *City of Jersey City,* 68 *Id.* 607; *Parker* v. *Point Pleasant,* 11 *N. J. Mis. R.* 535, and *Weed* v. *Township Committee of Hillside,* 85 *Atl. Rep.* 329, are cited, among others.

One-half of the expense of the advertisements in question was incurred before the first application for a *certiorari,* and the entire expense had been incurred and most of the advertisements published when the second application was made. The writ was allowed "without stay;" and thus it did not operate as a *supersedeas.* It is the general rule that even a contract *ultra vires* for failure of an appropriation or other act made a condition precedent by statute may be ratified by performance of the condition essential to a valid agreement in the first instance, *e. g.*, the making of the required appropriation. *Gutta Percha and Rubber Manufacturing Co.* v.

*Village of Ogalalla,* 40 *Nebr.* 775; 59 *N. W. Rep.* 513; 44 *C. J.* 1146. Of course, a contract wholly and fundamentally beyond the power of the municipality, as distinguished from a corporate power conditioned as to exercise, is utterly void, and therefore incapable of ratification. But it is also a rule of general acceptance (indeed, a modern text writer cites no case contrariwise) that an *ultra vires* contract made by a municipality which has been fully performed by both parties is no longer assailable by either party. 38 *Am. Jur.* 183. This principle has been applied to cases where, as here, the municipal corporation is empowered to enter into the particular contract, but the contract is *ultra vires* in the restricted or secondary sense that the power has been defectively or irregularly exercised, and the municipality has received the benefits of the contract and paid the stipulated price. *State, ex rel. Morris* v. *Clerk,* 116 *Minn.* 500; 134 *N. W. Rep.* 129; 39 *L. R. A.* (*N. S.*) 43; *Bell* v. *Kirkland,* 102 *Minn.* 213; 113 *N. W. Rep.* 271; 12 *L. R. A.* (*N. S.*) 793; 120 *Am. St. Rep.* 621. But the decision need not turn on this point.

We are of opinion that the appropriation here fairly comprehends the expenditures made. Generally, municipal ordinances are construed by the same rules which apply in the interpretation of statutes. Ordinances are to receive a reasonable construction and application. The aim of judicial construction is to discover the sense in which the terms were employed by the legislative body. The words "Railroad Tax Litigation" are to be given their ordinary acceptation and significance. The natural import of the words employed in the enactment, according to their common use, when applied to the subject-matter of the act, is ordinarily considered as expressing the intention of the lawmaking body. *Bayonne Textile Corp.* v. *American, &c., Silk Workers,* 116 *N. J. Eq.* 146, 160. We are convinced that, by this construction, the words "Railroad Tax Litigation" are given the sense and meaning intended by the local legislative body. The term "litigation" has a broad significance in common usage. It is defined thus: "Act or process of litigating; a suit at law; a judicial contest; also, figuratively, dispute; discussion." *Webster's New International Dictionary* (*2d ed.*).

At the time of the enactment of the appropriation measure, the controversy respecting railroad taxes, accrued and to accrue, had taken a wide range, which included also the question of the tax formula that would approximate justice between the state and the railroads. There was then pending litigation involving the validity of chapter 291 of the laws of 1941 (*Pamph. L., p.* 788), as amended by chapter 169 of the laws of 1942 (*Pamph. L., p.* 513); and it was the position of the city that the rate of $3 for each $100 of valuation therein fixed contravened the state constitutional mandate (article IV, section VII, paragraph 12) that property shall be assessed for taxes "under general laws and by uniform rules, according to its true value," and that the adoption of the tax formula embodied in the suggested revision of that constitutional precept would "destroy the legal basis for the attack then pending" upon these statutes. This issue has since been determined by the Supreme Court. *City of Jersey City* v. *State Board of Tax Appeals,* 133 *N. J. L.* 202. An appeal from the judgment therein is now pending in this court. We consider that these questions are all so interrelated in subject-matter as to be embraced within the general head of "Railroad Tax Litigation." In popular acceptance and meaning, this legend was designed to cover expenditures deemed essential to the proper presentation of the issues and the city's cause, not only in judicial tribunals but in the forum of public opinion. That such was the conception of the purpose of the appropriation in the popular mind is reasonably clear; and thus the requirement of the statutory provision for appropriation of funds for public purposes was satisfied. *R. S.* 40:2–12, 40:2–29, 40:50–6. And we are not required to give the term "litigation" its strict literal meaning. It has a figurative, analogical sense in common usage which covers the expenditures under consideration; and we are aware of no reason why it should not have that significance here. We do not think that the local legislative body had in mind the restricted meaning of that term, nor that it was so understood by the public. Such nicety of distinction is not ordinarily to be found either in the expression or the understanding of local legislative enactments.

McGeehan, J. (Concurring). This is an appeal from the dismissal by the Supreme Court of a writ of *certiorari* issued on the application of appellant to review a resolution adopted by the governing body of Jersey City on October 3d, 1944. The resolution under attack is set forth in the opinion of the Supreme Court, 132 *N. J. L.* 552.

The appellees contend that the writ was properly dismissed, since appellant has "no personal or property interest to be specially and immediately affected by the action complained of, and distinct from that of citizens and taxpayers generally" and consequently appellant was not a proper party to prose-· cute *certiorari*. To support this contention, they cite *Tallon* v. *City of Hoboken*, 60 *N. J. L.* 212; *Ford* v. *City of Bayonne*, 87 *Id.* 298, and *Altschul* v. *Jersey City*, 8 *N. J. Mis. R.* 708. These cited cases have no application to the facts of this case. Where a municipal corporation, by action *ultra vires* or otherwise, embarks in a scheme which will result in the unlawful expenditure of public funds, any ordinary taxpayer may be admitted to prosecute a *certiorari* to review such action. *Rehill* v. *East Newark and Jersey City*, 73 *N. J. L.* 220; *affirmed*, 74 *Id.* 849.

The appellees further contend that the writ was properly dismissed, since the transactions directed by the resolution under review were completed and judgment on the writ could accomplish nothing. No charge is made that the prosecutor was in laches in challenging the resolution; the fact is that the prosecutor acted with the greatest diligence. The writ was allowed on November 1st, 1944, and served on appellees the same day. Payment for October advertisements amounting to $14,444.72 and for November advertisements amounting to $13,510.42 was made by Jersey City on November 6th, 1944, and further payments totaling $2,302.08 were made on November 21st and December 6th, 1944. There is no merit in this contention; to sanction it would be to permit offending public officials, by quick action in making payment in the face of a challenge to their right to do so, to raise a bar against one seeking to prevent the unlawful expenditure of public funds.

Two meritorious questions are involved in this appeal:

first, did the city have power to expend public funds for the purpose indicated by the resolution; and second, if it had such power, were the expenditures legally chargeable to the budget item "railroad tax litigation."

As to the power of the municipality to expend the moneys, the question of such power was raised under very similar circumstances in *In re Carrick* (1941), 127 *N. J. L.* 316, and the decision therein was that the municipality has such power. The scope of the power of the municipality was set forth in that case as follows:

"The proposed legislation was thought to seriously affect the financial life of the city. Municipal officers have a broad discretion in promoting the welfare of their communities. * * * In this case a public question of local interest was before the legislature. The precise manner in which the local authority should present its views rests in the sound discretion of its officials. Courts cannot control the form of public expression."

Since in the Carrick case the application for the writ of *certiorari* was denied, it follows that the court found that there was no debatable question presented. The refusal of the Supreme Court in that case to grant *certiorari* prevented an appeal to this court (*Staubach* v. *Cities Service Oil Co.,* 130 *N. J. L.* 157) and put the matter in controversy at final rest. Under these circumstances, municipal officials had a perfect right to rely on the language quoted above as giving them the breadth of power therein stated. The only differences between this case and the Carrick case are: (a) in the Carrick case it was railroad legislation which the city regarded as disadvantageous to the interests of its citizens, while in the instant case it was a proposed revision of the tax clause of the constitution as it affected railroad tax litigation which the city regarded as disadvantageous to the interests of its citizens; and (b) in the Carrick case many of the bills incurred had been paid before the writ issued, while here no bills were paid before the writ issued, but most of the bills were paid before return to the writ was made. I conclude that, under the broad grant of power in the Carrick case, the city had the power to expend public funds for the purpose indicated by the resolution.

The statement of municipal power in the Carrick case is so broad that it may well be used as a shield by municipal officials against almost any attack on the exercise of a claimed municipal power. If this broad power is to be curtailed, it should be curtailed by the legislature. Even if this court desired to overrule the broad grant made by the Carrick case, the overruling could be effective only prospectively and would not affect the decision in this case (see *Montana Horse Products Co.* v. *Great Northern Railway Co.,* 91 *Mont.* 194; 7 *Pac. Rep.* (2d) 919; affirmed in *Great Northern Railway Co.* v. *Sunburst Oil and Refining Co.,* 287 *U. S.* 358).

If the power to expend public funds for the purpose indicated by the resolution is granted, the attack made upon the payment therefor from a budget item entitled "railroad tax litigation" must, in my opinion, fall. The objective of the Budget Act is to require municipal officials to give notice to the citizens of the specific purposes for which the municipal moneys are to be spent during the budget year. The Budget Act (*R. S.* 40:2–21, as amended *Pamph. L.* 1938, *ch.* 128) provides, "The budget * * * shall be itemized according to the respective objects and purposes for which appropriations are made * * *." In *Mackay* v. *Belvidere,* 101 *N. J. L.* 250, an appropriation in the budget entitled "preservation of life and property" was properly struck down because it was too general. The item "railroad tax litigation" is itemized in the best spirit of the Budget act requirements. "Litigation," which in itself is an itemization, is limited by "tax" and again by "railroad." Appellant argues that under this item of "railroad tax litigation" the Court should determine the objects and purposes for which expenditures may be made therefrom by applying to the word "litigation" the construction which this word has received in decisions of the courts construing it as it appears in the context of a statute or a constitution. If this contention of the appellant is correct, the expenditure in this case, which was thought by the governing body to be a preventer of litigation, cannot be approved. The true test is not what the word "litigation" would mean in a statute or constitution, but rather did the item as stated in the budget fairly inform the citizens that expenditures might be made thereunder for purposes germane

to the label of the appropriation item. The items in the budget appear in tabular form. If the construction put upon a word when used in a statute or constitution is to be the measure of the meaning of a budget item, every municipal official will be in constant danger. Under the rule advocated by appellant, imagine the danger to the municipal officials if the word "office," "position" or "employment" is used in any budget item, because under such rule the meaning of the word would then be subjected to the finely spun technicalities which have been woven around these words by our decisions during the last sixty years construing these words in the statutes and the constitution. If such a rule were adopted, it would deter honest citizens from seeking public office in a municipal governing body, and honest officials in office would be subject to an ever-present threat of indictment, forfeiture of office and pecuniary liability. Such a construction would make the Budget Act an engine of oppression instead of the salutary piece of legislation it was intended to be. "Railroad tax litigation" as a budget item gives reasonable notice to the taxpayers and public of the municipality that moneys may be spent thereunder for any purpose germane to railroad tax litigation, provided the municipality has the power to make the expenditure; and this even though the expenditure may be antecedent to the actual litigation itself, or even though it may be incurred without the railroad tax litigation following.

COLIE, J. (Dissenting.) I am unable to agree with the holding of the majority opinion that "a municipality may lawfully publicize, at public expense, what its governing body conceives to be sound reasons, relating to the essential local welfare, for the rejection by the people of the state of proposed amendments to the constitution."

A municipal corporation has been held by this court in *N. J. Good Humor, Inc., v. Bradley Beach,* 124 *N. J. L.* 162, to "possess only such rights and powers (a) as have been granted in express terms; (b) as arise by necessary or fair implication, or are incident to the powers expressly conferred, and (c) as are essential to the declared objects and purposes of the municipality—not merely convenient, but indispens-

able." The same case held that any reasonable or fair doubt of the existence of the asserted power is to be resolved against the municipality. In *Jersey City* v. *Martin,* 126 *Id.* 353, this court unanimously held that "a municipality is merely a political subdivision or department of the state. It is an agency created for the exercise, within the prescribed limits, of the governmental functions and powers of the state. It is but the creature of the state, and exists at its pleasure. As respects both its strictly governmental office and its municipal character for the conduct of local self-government, the legislature is the exclusive source of its authority; and its continued corporate existence, as well as the scope of its powers, depends upon its will." The majority opinion justifies the adoption of the resolution of the city commissioners on the theory that the right to pass the resolution was a necessary or fair implication incident to powers expressly conferred and essential to the declared objects and purposes of the municipality, and cites *N. J. Good Humor, Inc.,* v. *Bradley Beach, supra,* for authority and also *R. S.* 40:48–2 and *R. S.* 40:72–3, which latter section provides that "Every municipality * * * shall have all the powers necessary for its government not in conflict with the laws applicable to all municipalities or the provisions of the constitution." The City of Jersey City argued in its brief before this court with reference to *R. S.* 40:72–3 that "this is an express grant by the legislature of plenary power for the exercise of *proper governmental functions* by the governing bodies of municipalities under the commission form of government." (Italics mine.) A reading of the majority opinion leads me to the conclusion that the court has adopted this argument, although not in so many words. The argument is untenable. It might be sound except for the fact that it neatly begs the question at issue by the unwarranted assumption that the advertising campaign authorized by the resolution under review constitutes a "proper governmental function." Whether or not it is a proper governmental function is the nub of the question at issue, and it is illogical to base an argument for the validity of the resolution upon a premise that it is valid when, in fact, that is the disputed question.

The legislature has dealt with the subject of advertising by a municipality. See chapter 152 of the laws of 1917, now *R. S.* 40:48–1 (30), reading: "The governing body of every municipality may make, amend, repeal and enforce ordinances to: * * * 30. Appropriate funds for advertising the advantages of the municipality." The legislature has upon the single occasion when it spoke on the subject of municipal advertising, specifically limited the field to "the advantages of the municipality." In the face of that action, it seems altogether inconsistent to assert that the right to advertise may be spelled out of the provisions of *R. S.* 40:72–3. If the right already existed, why was it necessary to enact the 1917 statute, now *R. S.* 40:48–1 (30)?

There is a more fundamental reason why the asserted power may not be exercised by the municipality. The question of whether the people of the state should revise the constitution is a political question in the sense that it pertains to the policy or the administration of government. The question is one of state-wide importance, the decision of which is, under article 1, paragraph 2 of the state constitution, "inherent in the people." Being inherent in the people, it cannot be inherent in a political subdivision of the state, of which a municipality is one. The majority view seeks to justify the resolution of the city commissioners by analogy from the undoubted right of a municipality to spend public funds in presenting its viewpoint to the legislature. However, there is a vital difference between the nature of a legislature and "the people." In *State* v. *Parkhurst*, 9 *N. J. L.* 427 (at *p.* 443), Chief Justice Kirkpatrick clearly pointed out one way in which the difference between a legislature and the electorate is distinguished and it is equally, if not more, applicable to a municipality. He said that a constitution "according to the common acceptation of the word in these United States, * * * may be said to be an agreement of the people, in their individual capacities, reduced to writing, establishing and fixing certain principles for the government of themselves.

"Among these principles, one of the most important in all our constitutions, is to prescribe and limit the objects of legislative power. The people are sovereign, they are supreme in power. The legislature act(s) by delegated and circum-

scribed authority; circumscribed as to its objects, circumscribed as to its extent over those objects. Now to say that the legislature can alter or change such a constitution, that they can do away (with) that very principle which at the same time gives and limits their power, is in my view a perfect absurdity. It is making the creature greater than the creator. It is establishing despotism without limitation and without control." If it is beyond the power of the legislature to alter the constitution then it must necessarily be beyond the power of a municipality which is subservient to the legislature.

If the City of Jersey City has the right to expend money raised by taxation for the purpose of influencing the electorate of the State of New Jersey against voting for a revision of the state constitution because, in the judgment of the city commissioners, its adoption would be inimical to the interests of the municipality, then, in principle, it would be proper for the city to pass a resolution authorizing the expenditure of funds for a state-wide advertising campaign to defeat a candidate who was running for the office of Governor of the state and whose election would be inimical to the municipality.

The majority decision is "establishing despotism without limitation and without control" for if we follow to its logical conclusion the sweeping generalization first quoted in this dissent, then the governing body of a municipality, for what it conceives to be sound reasons, may publicize the electorate at public expense, with its reasons why it, the governing body, should be re-elected to office. I take it that no one would attempt to justify the legality of such an attempt at self-perpetuation by elective officers, and I could only wish that the majority opinion and pointed out where the line should be drawn beyond which a municipality may not go in attempting to influence the electorate of the state.

The right of a municipality to spend funds raised by taxation in order to influence voters in a state-wide referendum, runs counter to the American system of decentralization, in which the primary and vital idea is that local affairs shall be managed by local authorities and general affairs by the central authority. *Cooley, Constitutional Limitations, ch.* 8. It is on this theory that the constitution was amended to

prohibit the legislature from regulating the internal affairs of towns and counties. *Article 4, section 7, paragraph* 11. The theory that local affairs shall be managed by local authorities, and general affairs only by the central authority is not a theory that works but one way, and there is an equal obligation upon the local authorities to refrain from injecting themselves into general affairs. Nor, in my opinion, is it permissible to argue that the adoption of a new constitution is a matter of local concern to a municipality. It is a matter of concern to the "people" who reside within the geographical limits of the municipality and it is the privilege of the "people," if they so desire, to take action in their capacity either as individuals or as an association of individuals.

There is an additional reason why the decision of the Supreme Court should be reversed. The resolution authorized that the expenses of this advertising campaign be charged "against Account No. 225, wherein appropriation has been made for railroad tax litigation."

The majority opinion holds that the words "railroad tax litigation" are to be given the sense and meaning intended by the local legislative body. With that statement I cannot agree. Our legislature has provided that "the budget * * * shall be itemized according to the respective objects and purposes for which appropriations are made * * *." One of the purposes sought to be achieved by the Budget Act was to give publicity to the items of the budget and to afford the public a better understanding of the financial condition and affairs of municipalities in which they are interested. *Chamber of Commerce* v. *Essex County*, 96 *N. J. L.* 238; *Mackey* v. *Mayor, &c., of Belvidere*, 101 *Id.* 250. It is utterly immaterial what sense and meaning the local body may have had in mind when it used the words "railroad tax litigation." What is of importance is the actual meaning. The majority opinion says, I quote: "The term 'litigation' has a broad significance in common usage. It is defined thus: 'Act ·or process of litigating; a suit at law; a judicial contest; also, figuratively, dispute; discussion.' *Webster's New International Dictionary* (2d ed.)." If this definition is meant to show that the word "litigation" encompasses "dispute" or "discussion," I think that it falls far short of the purpose,

since the word is defined only in a figurative sense as including "dispute" or "discussion," and there is no authority that I know of which justifies using words in a municipal budget in a figurative sense. An exhaustive research has failed to disclose a single definition of the word "litigation" so broad as to cover what was done in this case.

The following are typical definitions of "litigation:"

"The act or process of litigating, or carrying on a law-suit in any forum, whether a court of law or otherwise." 13 *Am. & Eng. Encyc. of Law* (*1st ed.*) 925.

"A contest in a court of justice, for the purpose of enforcing a right; a judicial contest, a judicial controversy; a suit at law." 38 *C. J.* 68 quoted in *In re Loudenslager,* 113 *N. J. Eq.* 418.

"A contest, authorized by law, in a court of justice, for the purpose of enforcing a right." *Bouvier's Law Dictionary* (*14th ed.*), also *Shumaker & Longsdorf, Cyclopedic Law Dictionary.*

"Services and activities of attorneys-at-law and others in appearing before the legislature and the committees thereof, and in otherwise combating a movement to create by constitutional amendment a new county, however commendable it may be in the county authorities to resist the subtraction from their county of territory necessary in the creation of the proposed new county, does not come within the definition of 'litigation,' when that term is given its broadest possible legitimate signification." *DeVaugn* v. *Booten,* 146 *Ga.* 836; 92 *S. E. Rep.* 629.

See, also, 25 *Words and Phrases,* (*Permanent Ed.*) *tit.,* "*Litigation,*" 402 to 405.

For the reasons stated above, I vote to reverse the judgment under appeal.

Justices Parker and Oliphant and Judge Freund desire to be recorded as concurring herein.

*For affirmance* — THE CHANCELLOR, CHIEF JUSTICE, DONGES, HEHER, PERSKIE, RAFFERTY, DILL, McGEEHAN, JJ. 8.

*For reversal*—PARKER, COLIE, OLIPHANT, FREUND, JJ. 4.