In the Matter of the Application of THE TAXPAYERS AND FREE-
HOLDERS OF THE VILLAGE OF PLATTSBURGH for a Summary Investi-
gation into the Financial Affairs of the Village of Plattsburgh.

ALFRED GUIBORD and Others, Appellants; L. W. BROMLEY and
Others, Taxpayers of the Village of Plattsburgh, Respondents.

*An investigation, under the General Municipal Law, of the financial accounts of the
village of Plattsburgh — debts incurred contrary to the charter — payment of the
bills of one year from the appropriation of another — what is not a " deficiency " in a
"fund"— audit of bills after payment — illegal openings of streets and construction
of sewers — audit of a claim of a member of the auditing board—payment for
plans and specifications for a proposed town house and for services of counsel before
the Governor and Legislature — employment of a prosecuting taxpayer as an expert
to examine the books — costs and their taxation — a village president may be charged
with costs of the investigation.*

The provisions of a village charter (Laws of 1890, chap. 322, tit. 7, §§ 1, 3) enact-
ing that its board of trustees may raise annually by taxation amounts within
certain fixed limits for specified purposes, and that no liability can be incurred
by the village "except for the ordinary expenses of the village within the
income of the current year applicable to that purpose," constitute an absolute
prohibition against the expenditure for any given purpose of more than has
been appropriated for that purpose and also against incurring any liability in
excess of that amount, and confine the expenses of each year to the amount
appropriated for that year, and the trustees cannot lawfully pay bills contracted
in one year out of moneys appropriated for another year.

A further provision, authorizing the trustees, " whenever there shall be any excess
of money in any one fund raised by tax, to apply any such excess to supply
any deficiency that may exist in any other fund," does not justify the trustees
in transferring an excess of money in one fund to another fund which proves
inadequate for its purpose, as the insufficiency of an appropriation for the pur-
pose for which it was made does not constitute a "deficiency " in the fund
created by the appropriation; that word covers only a case in which the tax
imposed has not resulted in raising the amount authorized to be raised.

Where village trustees are required by law to audit claims against the village, an
audit of claims, after their payment by the village treasurer, by the action of
the trustees in merely passing upon the vouchers when they examine the treas-
urer's account at the end of the year, is a substantial violation of law.

The opening of streets and the construction of sewers therein by direction of a
committee of the board of trustees, without the authority of the trustees, upon
land not previously acquired by the village, in entire disregard of the village
charter, no resolution or ordinance of the board of trustees providing therefor
having been adopted by that board, and the payment of the expenses incurred
for such improvements from the village treasury, without prior audit, instead

of by assessments upon the property benefited as required by law, are illegal acts.

*It seems,* that the board of trustees has not power to delegate such authority to a committee of that body, as its execution involves the exercise of judgment and discretion.

A recommendation, as distinguished from a direction, of the board of health considered.

The audit by a board of health of bills for provisions furnished, to persons isolated by the board of health, from his own store by one of the members of that board, who thus sits in judgment upon his own claims, is a positive illegality.

The payment of money to an architect for plans and specifications for a proposed town house is a proper village expenditure under a charter provision which contemplates the raising of money for "contingent expenses and other general purposes," and also for special purposes to be submitted to the electors.

A charter provision which authorizes the employment of an attorney "when the business of the board of trustees or village requires, either by the year or otherwise," justifies the employment of counsel to appear before legislative committees and the Governor to urge the passage of a law to bond the village in order to pay for proposed improvements.

A taxpayer, although one of the persons who instituted a proceeding, under the General Municipal Law (Laws of 1892, chap. 685, § 3), to investigate the financial affairs of a village, may properly be appointed by the court an expert to examine the village accounts; his relation to the investigation affects his credibility but not his competency.

The costs of such an investigation, which is a special proceeding, are regulated by section 3240 of the Code of Civil Procedure, and if the taxation has been without notice the remedy is not with the Appellate Division in the first instance, but must be sought under section 3264 of the same Code.

The president of a village, made by its charter a member of its board of trustees, may be charged with costs, under the statute, as one of the "officers whose expenditures are investigated."

PARKER, P. J., and MERWIN, J., dissented.

APPEAL by Alfred Guibord and others from an order made by a justice of the Supreme Court and entered in the office of the clerk of the county of Clinton on the 7th day of April, 1897, declaring certain acts of the appellants, as officers of the village of Plattsburgh, illegal, restraining the payment of certain claims against said village contracted by such officers, and imposing upon them the payment of the costs of the proceeding.

In February, 1897, an affidavit was presented to a justice of the Supreme Court, verified by some twenty-seven freeholders of the village of Plattsburgh, upon which an application was made for a summary investigation into the financial affairs of such village, pursuant to section 3 of chapter 685 of the Laws of 1892.

. The application was granted by the justice and a time fixed for the hearing, and evidence was taken which resulted in the decree or order from which this appeal is taken.

The appellants are the president, treasurer, trustees, and two former trustees of said village.

At the close of the hearing the justice rendered a decision, the substantial portions of which are fairly epitomized in the appellants' statement of facts, as follows:

1. "That under the village charter taxes raised for current expenses in one year could not lawfully be used to pay indebtedness created in a prior year."

2. "That there was paid in 1896, in discharge of indebtedness in 1894 and 1895, the sum of $5,556.18."

3. "That there was paid out of the treasury in 1896, for sewers and drains, $4,800.83, while $3,000 only was applicable to such purpose."

4. "That there was paid out of the treasury in 1896 $8,477.66 for streets and sidewalks, while only $7,500 was applicable thereto."

5. "That there was taken from the treasury for general use the general fund, $5,978.85, while only $4,770.63 was applicable thereto."

6. "That there were outstanding unpaid bills against the village to the amount of $11,170, of which $5,110.35 were for bills contracted by the board of health."

7. "That $24,229.75 had been paid out by the village upon claims never audited by the board of trustees. Of this amount $5,406.49 was for salaries, and $480 for interest on bonds."

8. "That in 1896 two new streets were laid out and constructed called Sherman and Grant streets respectively, having a length of about fifty rods, and costing about $1,800, upon land not owned by the village."

9. "That six sewers, each exceeding twenty rods in length, were constructed without authority of law."

10. "That in 1895 a note of $1,388.12 was made by the president and treasurer and paid (without order of the board of trustees) in 1896 together with $83.30 interest thereon."

11. "That in March, 1896, the trustees authorized the president and clerk to borrow $5,000 to pay bills past due and for current

expenses, and that the same was paid August 10th, 1896, with $150 interest thereon."

12. "That in October, 1876, there was unlawfully paid $162 to M. A. Diaz for plans and specifications for a town house."

13. "That there was paid to Judge Shedden and Mr. Wheeler $223.60 for services as attorneys for appearing before committees of the Legislature and the Governor, in urging the passage of a law to bond the village $50,000 for various proposed improvements."

14. "That in April, 1896, a bill of the board of health of $3,500.35 was audited by the trustees, and that such bill contained an item of $105.50 which was illegal, for registration of births, marriages and deaths, and that such bill also contained an illegal bill of $1,532.88 for groceries furnished by the board of health to different persons while under quarantine."

Upon such findings and conclusions the justice made an order enjoining and forbidding the payment by the treasurer of said village: *First*, of the sum of $105.50 for the registration of births, marriages and deaths; *second*, the sum of $1,532.88 for supplies furnished to persons quarantined; *third*, payment of any sum of money raised by taxation for the current year of 1897 upon claims or indebtedness created in 1896, or any prior years, and from the payment of any warrant upon any fund after he has paid out the sum allotted by law or fixed by the board of trustees for such fund; *fourth*, enjoining and restraining them from paying any of the expenses of this investigation.

The justice taxed the costs and expenses for the investigation at the sum of $778.75, which sum he stated as including attorney and counsel fees employed by the taxpayers named in the affidavit, and directed that such costs be paid by the appellants herein. From such findings, orders and injunction this appeal is taken.

*S. L. Wheeler* and *Edgar T. Brackett*, for the appellants.

*Wm. L. Pattisson* and *Royal Corbin*, for the respondents.

HERRICK, J.:

We are asked to review, upon this appeal, not only that portion of the justice's decision in which he enjoins the officers of the village of Plattsburgh from paying certain specific claims or parts of

claims, but also to review his decision in regard to alleged illegal payments made or liabilities incurred, and now outstanding against said village, because, as it is claimed, his findings and decisions in relation thereto will be conclusive upon the defendants in the event of any proceedings being taken against them to cause them to pay into the village treasury the moneys thus found by the justice to have been illegally paid by them; or, in the event of any proceedings being taken against them, to compel payment of the bills found by him to have been illegally contracted and now outstanding and unpaid.

The record is quite voluminous, and the items and claims passed upon by the learned justice are many, but I shall content myself with reviewing only those embraced by the appellants in their statement of facts as above set forth.

It will be observed that they may be classified under several heads : *First*, moneys paid in excess of the amounts appropriated ; *second*, bills contracted in one year paid out of funds raised and appropriated for another year ; *third*, claims paid without being audited ; *fourth*, liabilities and claims contracted, for which no appropriation had been made, or in excess of the amount appropriated therefor ; *fifth*, moneys paid for streets not opened, or land therefor acquired by the village, and for the construction of sewers without authority of law ; *sixth*, illegal items contained in bills of the board of health ; *seventh*, bills paid for services, the rendition of which the village officers had no power to authorize.

To enable us to determine the questions thus raised it will be necessary to resort to the statute under which the village of Plattsburgh is incorporated, and see what powers are granted to it and its officers in the raising and expenditure of moneys.  Like all charters of municipal corporations it is provided that the major portion of the expenses of maintaining the village government shall be raised by taxation, and by section 1 of title 7, chapter 322 of the Laws of 1890, it is provided that the board of trustees may raise by taxes annually the following sums of money :

1. " A sum sufficient to pay all installments of principal and interest on the bonded debt of the village of Plattsburgh, except as may be otherwise provided for."

2. " A sum sufficient to pay any judgment recovered against the village."

3. " A sum sufficient to refund the taxes collected on erroneous assessments."

4. " A sum sufficient to pay the current expenses of the fire department, not exceeding one thousand dollars."

5. " A sum sufficient to pay the current expenses of maintaining streets, sidewalks and public grounds, not exceeding seven thousand five hundred dollars."

6. " A sum sufficient to pay for building, laying and maintaining sewers and drains, not exceeding one thousand dollars."

7. " A sum sufficient to pay the salaries of the officers of said village, contingent expenses and other general purposes, not exceeding three thousand five hundred dollars."

8. " Such further sums for special purposes as shall have been duly authorized by vote as provided in the next section."

Standing alone this would indicate an intention to provide for annual expenditures by annual appropriations and taxation, the appropriations of each year to take care of the expenses of that year.

Also that it is a limitation upon the authorities of the village as to the amount they are permitted to expend, because it must be assumed that when the Legislature limited them as to the amount they might raise for a specific purpose, they thereby also limited them as to the amount they were at liberty to expend for that same purpose.

This construction is confirmed by the provisions of section 3 of the same title, reading as follows : " Money cannot be borrowed on the credit of the village, nor can any debt or liability be incurred by the village, except for the ordinary expenses of the village within the income of the current year applicable to that purpose. Any officer or person who shall assume to create a debt or liability, or appropriate any money or property of the village, contrary to the provisions of this act, or shall assent thereto, shall be personally liable for such debt or liability, and to the village for such money or property. Each trustee present when such violation shall have been ordered shall be deemed to have assented thereto, unless his dissent be expressed and entered on the journal. Any willful violation of this section shall also be a misdemeanor."

This constitutes an absolute prohibition against the expenditure,

for any purpose, of any more than has been appropriated for that purpose, and also against incurring any debt or liability in excess of that amount.   This confines the expenses of each year to the amount appropriated for that year.

The appellants claim, however, that they are not limited in their expenditure to the amounts specified in subdivisions 4, 5 and 6 of section 1 above quoted, for the purposes specified in such subdivisions respectively, but that they may increase the amounts specified in any one of those funds by transferring from another fund, citing as authority therefor that portion of section 9 of title 7 which reads as follows : " The trustees shall have power, whenever there shall be any excess of money in any one fund raised by tax, to apply any such excess' to supply any deficiency that may exist in any other fund."

In the answer made by them to the affidavit presented to the justice, they alleged that, after expending the sum of $7,500 for the maintaining of the streets and sidewalks for the year 1896, they found that there was a large amount of work necessary to be done in order to put the streets and sidewalks in a passable and safe condition ; that they found that there was an excess in the general fund, and that they applied sufficient of that excess in the general fund, transferring the same to the street fund, for the purpose of making such repairs.   And a similar allegation is made as to the transfer from other funds to the sewer fund.

Such a construction of the statute is not permissible ; to allow it would defeat one of the purposes of the statute.

I do not think that, where more money is raised for a specific purpose than that purpose requires, the excess can be added to the amount authorized by law to be raised for any other purpose.

If the prohibition of section 3 is observed, then there will be no expenditure for any purpose in excess of the amount appropriated for that purpose, and there will be no occasion for a transfer of money from one fund to another.

The construction of the word " deficiency " contended for by the appellants provides a way for evading the provisions of section 3, and if upheld we will have a statute, one section of which positively prohibits the doing of certain things, and another section pointing out how such prohibition can be evaded.

"Deficiency" is defined to be the "lack of a part." (Worcester's Dict.)

In this case there was no part of the fund lacking; it may have been insufficient, but it was all raised, and all in the treasurer's hands.

It will be observed that the statute provides for a deficiency in the "fund," not in the appropriation which makes up that fund.

Insufficiency of the appropriation for the purpose for which it is made does not constitute a deficiency in the fund created by the appropriation.

The only reasonable construction to be given the word "deficiency," as used in section 9 of title 7, is that it arises where the tax imposed has not resulted in raising the amount authorized to be raised by the board of trustees.

Where there has been an amount expended or contracted to be expended for a specific purpose in excess of the amount appropriated for that purpose, the excess so expended or contracted for is not a deficiency within the meaning of the statute.

To hold otherwise would practically destroy the limitation upon expenditure evidently intended by this act. To illustrate, by subdivision 6 of section 1 of title 7 the trustees are limited in the amount that they may raise by taxation for the building, laying and maintaining of sewers and drains to an amount not exceeding $1,000.

By other subdivisions they are authorized to raise for specific purposes amounts which are not limited, and which in the nature of some of the cases will have to be estimated; they might estimate one of those sums at say $10,000, and find that they only needed $1,000, and upon the theory contended for they could add the $9,000 which they had raised in excess of what they needed to any one of the funds provided for by subdivisions 4, 5 and 6, and the annual tax budget presented by the village authorities to be raised by tax would be like the unbalanced bids sometimes made by contractors.

It appears from the examination of the president that $1,000 was raised by special vote for fire purposes in addition to the $1,000 provided for by subdivision 4 of section 1, presumably pursuant to section 2 of title 7, and that the $1,000 so raised by special vote was transferred to the general fund; and, as we have seen, the appellants claim that, there being an excess in the general fund, they transferred a portion to the street fund to meet the expenditures upon,

streets in excess of the appropriations for street purposes.   Of course they had no right to make this transfer, because there was no deficiency in the general fund; they claim there was an excess in that fund, and, therefore, made a transfer from it to the street fund. Was that excess caused by the transfer from the fire fund?

Raising money for one purpose and using it in this manner for another is deluding and misleading the taxpayers, and is in violation of the statute.

If I am right in my construction that the Legislature intended to limit the village authorities in their expenditures for the purposes enumerated in sections 4, 5 and 6, to the amounts therein specified respectively, then they have no right to add to the amounts therein specified, either by transferring from other accounts or by using the fines and license fees collected, and that conclusion disposes of that class of expenditures found by the justice to have been made in excess of the amounts appropriated.

The next to be considered is where claims contracted one year have been paid out of funds raised and appropriated for another year.   This is practically disposed of by the previous discussion.

If the provisions of section 3 of title 7 are lived up to there can be no outstanding claims.   Each year's expenses and indebtedness will be taken care of by each year's appropriations.

That section prohibits borrowing by the village officers; it also prohibits the incurring of any debt or liability except for the ordinary expenses of the village within the income of the current year.

Paying the debts contracted one year out of the appropriations made for the expenses of another year, will completely nullify the manifest intent of the statute, to confine the expenses of the village for each year to the amount appropriated for that year; it is a legalization of the acts of the village officers in violating the law, for if they had not violated the law by expending, or contracting to expend, more than had been appropriated, there would be no indebtness of a prior year.

The next class to be considered is that in which bills against the village were paid without having been audited.

The statute requires the audit by the board of trustees of all claims against the village prior to their payment by the treasurer.

This is conceded by the appellants, and it is also practically conceded that the statute in that respect has not been followed, but it is claimed that the violation of the statute is only a technical one, and that the village has not been injured by it.

It appears that many claims were paid by the treasurer and never passed upon by the board of trustees until they examined the treasurer's accounts at the end of the year, and that then, in examining his vouchers for moneys paid out, they passed upon such claims; and it is claimed that passing upon and approving his accounts at that time was practically an audit of the claims.

Assuming that such action was, in a sense, an audit of the claims, it should need no argument to convince any one that the payment of a claim first and the ascertainment of its legality and correctness afterwards is a grossly improper way of paying out the public moneys, even if there was no statute regulating the matter. Here there is a statute, and the method pursued is directly the reverse of that provided for by the statute.

It is not a mere technical violation of the law. All provisions of law enacted to protect our public treasuries are matters of substance, and a violation of any of them is a substantial and not a technical violation of law.

It may be that in this particular case the village has not suffered, but we do not know. We can readily understand that an account that has been paid will not, in many cases, be subjected to the same rigid scrutiny as one that has not.

This practice inevitably leads to looseness in the examination of claims against the village, and invites the presentation of illegal, improper and extravagant claims, and must sooner or later result in plundering the treasury. It is a method of transacting the public business that cannot be too strongly condemned.

The next class to be considered is that of liabilities and claims contracted, for which no appropriation has been made, or which are in excess of the amount appropriated therefor.

There is no need of discussing this. Section 3 of title 7 absolutely forbids the contracting of debts for which no appropriation has been made, or in excess of the appropriation for the current year, and makes further explanation unnecessary.

The next class to be considered is that of moneys paid for streets

not opened on lands not theretofore acquired by the village, and for the construction of sewers without authority of law.

It appears that two streets were laid out and constructed without any resolution or ordinance having been passed by the board of trustees providing therefor, and without the land having been previously acquired; and no part of the expense of the work appears to have been raised from or paid by an assessment upon the property benefited, as the law requires, but paid from the village treasury, and without being previously audited by the board of trustees. Not a single requirement of the statute in regard to the opening, laying out and improvement of the streets, and of paying the expenses therefor, seems to have been complied with.

Section 31 of title 8 of the statute provides, amongst other things, as follows: "Whenever the board of trustees shall intend to make and construct any of said drains or sewers exceeding twenty rods in length, they shall, before ordering the same, cause a notice of such intention to be published for two weeks successively in one or more of the newspapers published in said village, stating the time when and the place where said board will meet to act thereon. At such meeting, or at such adjourned or subsequent meeting as they shall order said hearing to be had, they shall hear such reasons as shall be given for or against the same."

This statute was not complied with, neither does it appear that the board of trustees ever authorized the construction of the sewers, but the work was apparently done under the direction and by the authority of the sewer committee, or of the chairman of that committee. The statute confers no such power upon a committee of the board of trustees.

The power to order the construction of sewers is conferred upon the board of trustees. In this case they did not attempt to delegate their authority to the committee, and if they had it would have been nugatory. The power conferred is one involving the exercise of judgment and discretion and cannot be delegated. (*Matter of Emigrant Ind. Savings Bank,* 75 N. Y. 388, 393.)

The expense of constructing these sewers appears to have been paid from the village treasury without being previously audited by the board of trustees, and no part of such expense was provided or paid for by assessments upon the property benefited.

It was claimed upon the part of the appellants that these sewers were constructed by order of the board of health, and that that relieved them from complying with the requirements of the statute. I can find no evidence that these sewers were constructed either by the order of the board of health or under their authority and direction ; the most that appears is a recital by them of the condition of the localities where the sewers were laid and the need of sewerage, followed by a resolution reading as follows : "*Resolved*, that the matter be brought to the attention of the board of trustees with the urgent request that suitable remedies be applied at once."

So that these sewers were not constructed under the authority or even by the direction of the board of health, but at the most upon their recommendation, and this recommendation could be and should have been carried out in the manner provided by law for the building of sewers.

The deed of the ground where the streets were laid out, and where some of these sewers or portions of them were laid, was given to the village after the streets had been laid out and constructed. While that vests the title to the land in the village, it does not otherwise cure the violation of law by the trustees in laying out such streets or constructing such sewers in disregard of the statute, or in paying the expense of these improvements to private lands wholly out of the village treasury, instead of paying it or a portion of it out of assessments upon the property benefited, as the statute requires.

All the provisions of the statute that I have so far considered are evidently intended for the protection of the taxpayers, to prevent waste and extravagance, and to limit the amount that can be raised or expended for village purposes, and they should be strictly construed to carry out that purpose and intent.

The next to be considered are alleged illegal items contained in bills of the board of health.

The item of $211 for registration of births, marriages and deaths, the justice found to be an overcharge to the amount of $105.50, and his finding in that respect does not appear to be questioned by the appellants. Another item is $1,532.88 for groceries furnished by a member of the board of health, by direction of the board of health, to different persons and families while isolated in their own dwellings by direction of the board of health, because they had, or had

been exposed to, some infectious disease. This expenditure I understand to have been, not for medicines or anything in the nature of medicines, but for food for the ordinary maintenance and support of such persons and families. The following is part of a bill for supplies furnished to one of the persons quarantined :

"1 half cord of wood, $2.25 ; cartage, 25 cts. ; paid woman for washing clothes, $2.00 ; 1 bottle cod liver oil; 1 bottle pickles, 25 cts. ; 3 lbs. rice, 24 cts. ; 1 doz. of eggs, 20 cts. ; 2 Meat, 20 cts. ; 2 cans tomatoes, 20 cts. ; 2 cans corn, 20 cts. ; 1 sack of something, 30 cts. ; 1 mug mustard, 10 cts. ; 1 bottle catchup, 25 cts. ; 1½ lb. cheese, 23 cts. ; 1 can strawberries, 25 cts. ; 3 doz. c. pins, 12 cts. ; 4½ lbs. beefsteak, 63 cts. ; 5 lbs. trout, 40 cts. ; 1 qt. syrup, 13 cts. ; 2 lbs. butter, 50 cts. ; 4 lbs. sugar, 24 cts. ; 1 doz. eggs, 18 cts."

It is claimed on behalf of the appellants that these bills for supplies were properly contracted for by the board of health, and audited by the board of trustees under the Public Health Law, being chapter 661 of the Laws of 1893, with its amendments. (See 1 R. S. [9th ed.] 787, *et seq.*)

The respondents claim that it is no part of the duty of the board of health to furnish provisions to isolated persons; that, if such persons are needy, the proper officers to supply their wants are the poor authorities of the town.

We are not required, however, to pass upon that question, for it appears that such provisions were furnished by a member of the board of health out of his own store, and he participated in the audit of his own bills. This is more than a mere impropriety ; it is a positive illegality. A member of the board of health is a public officer and trustee for the public, and has no right to deal with himself. His claim for articles furnished is disposed of by the cases of *Smith* v. *City of Albany* (61 N. Y. 444) ; *Beebe* v. *Supervisors of Sullivan County* (64 Hun, 377). (See, also, § 473 of the Penal Code.)

The next class of expenditures are those claimed to have been made utterly without authority of law, one item being money paid to an architect for drawing plans and specifications for a town house, and the other being the payment of attorneys for appearing before committees of the Legislature and before the Governor, and urging the passage of a law to bond the village to pay for various proposed public improvements.

I find more embarrassment in dealing with these items than with those heretofore considered. At the time when the plans and specifications for the town house were drawn up, no town house had been authorized to be erected; it was contemplated to submit the question of building a town house to the electors of the village.

The statute, in providing for what purposes money may be raised, provides (see subd. 7, § 1, tit. 7) for including an amount for "contingent expenses and other general purposes," thus recognizing the fact that there come up from time to time matters not foreseen at the time of making up the budget, and, therefore, not expressly provided for, and recognizing also the fact that, in the administration of every municipal government, there are incidental matters of business administration and expenses that are not expressly provided for in the statute, but that must be met.

The provisions in subdivision 8 of this same section, by which money may be raised for special purposes, such special purposes to be passed upon by the electors, may also fairly be taken into consideration in determining that the village may go into some matters of public concern not expressly authorized by its charter; and the procuring or erection of buildings wherein its officials may be housed and the public business transacted, is one not at all foreign, but incidental, to the purposes of a municipality; and in submitting the proposal to the electors as to whether such a thing shall be done, an estimate of the probable expense is certainly proper, if not necessary, in order to enable them to pass intelligently upon that question. Of course the probable expense cannot be estimated unless there are plans and specifications of the building proposed to be erected. Who shall prepare them, and who meet the expense? Shall it be left to the enterprise and public spirit of a private citizen or citizens, or can it not fairly be said to be incident to the powers and duties imposed upon the municipality, and that it should be paid out of the fund raised for contingent and general purposes?

The board of trustees, by subdivision 20, section 5 of title 4, is authorized "to employ an attorney and counsel when the business of the board of trustees or village requires, either by the year or otherwise, and to pay him a reasonable compensation."

Under that provision of the statute, had the trustees power to employ counsel to appear before committees of the Legislature

and the Governor in relation to any law or laws pertaining to the village ?

The general care of municipal affairs is intrusted to the officers of the municipality, and the initiating and providing for public improvements, or proposed public improvements, I think, is within their province. While individual citizens are not barred from setting them on foot, but should be encouraged to do so, yet, in the nature of things, they are left very largely to the municipal authorities ; and even when initiated by the enterprise or intelligence of the citizen, his first effort is to put the municipal officers in motion ; and if they find that their powers in that respect are limited or entirely withheld by the statute, it is perfectly proper for them to apply to the legislative power of the State for authority. This power or right, it seems to me, is incident to the general powers of government conferred upon them. The presentation of the merits of bills, or the necessity or propriety of legislation, to committees of the Legislature and to the Governor is legitimate employment for attorneys and counsel. It is a matter that requires skill and address.

The preparation and presentation of bills to the Legislature, by and on behalf of municipal authorities, to bring about needed or supposed needed improvements, or to obtain further powers for the making of public improvements, as well as opposing the passage of bills believed by the municipal authorities to be inimical to the interests of the municipality, is of constant occurrence of late years ; and some of the larger municipalities of the State keep some representative from the law department of such municipality in almost constant attendance upon the sessions of the Legislature, presenting and explaining to the Legislature bills proposed and legislation asked for by the municipality, and watching legislation prepared by others, and calling the attention of the Legislature to proposed improvident or unnecessary acts of legislation affecting their respective municipalities ; and I think such watchfulness over legislation prepared by others, and such attention to, and furtherance of, that which is deemed needful by the municipal authorities, has come to be regarded as a very proper and indeed necessary part of the functions of the law department of a city.

There is no specific authority given authorizing them to send their

law officers to attend upon the Legislature, or to pay their expenses for so doing, but it is regarded, and I think fairly so, as incident to the powers and purposes of the municipality. It seems to me, therefore, that in this case, the village having power to employ counsel " when the business of the board of trustees or village requires," it might legitimately employ them for the purpose heretofore specified, and their " reasonable compensation " for such service would be a legal claim against the village.

No question apparently being raised as to the reasonableness of the bills of the architect, and of the counsel employed, it seems to me that the decision of the justice as to them should not be sustained.

The appellants also complain of the reception by the justice of a statement of accounts of the village, made by one Newton. The statute which authorizes investigations of this kind also authorizes the justice before whom the investigation takes place to appoint experts; Mr. Newton was appointed by the justice in this case, and, upon the coming in of his report, the appellants objected to its being received upon the ground that he was one of the taxpayers who signed the affidavit upon which this proceeding was based, and was, therefore, personally interested in the result, and, therefore, not a competent and proper party to act as an expert. The fact that Mr. Newton was one of the taxpayers who requested the investigation to be made, and signed the necessary affidavit, goes to his credibility and reliability, but not to his competency; his appointment was purely a question of propriety, which the justice making it could alone pass upon; for aught we can tell, he may have been the best and most available man in the locality to conduct such an inquiry.

His statement or report was not received, however, as evidence, but he was sworn as a witness, gave testimony, and used the report to refer to, and it was received as a summary for the use of the court as to what he had found, and as to what he had testified to. I can find no reversible error, either in his appointment or in the use that was made of his report.

No criticism is made by the appellants as to the accuracy of the amounts found by the justice to have been expended, contracted for, audited or paid, except as to the amount found by him to have been paid out for streets improperly opened and improved; there is evi-

dence to support the findings of the justice in that behalf, and it should not be disturbed.

I think I have now considered all the questions raised by the appellants as to the investigation itself, or as to the conclusions of the justice therefrom.

But the appellants also complain of the allowance of costs, both as to the amount and the manner of allowance.

We have heretofore held this proceeding to be a special proceeding. (*People ex rel. Guibord* v. *Kellogg*, 22 App. Div. 176.)

The amount, therefore, is regulated by section 3240 of the Code of Civil Procedure.

The appellants claim that the costs were taxed without notice to them, and I can find no record of any notice of taxation or retaxation in the appeal book.

The remedy for taxation without notice is not with us in the first instance, but is provided for by section 3264 of the Code of Civil Procedure.

In addition to the objection made by all the appellants to the taxation of costs, the appellant Guibord claims that he should not be chargeable with any of the costs of these proceedings; that he is not a trustee of the village, and has not expended its money. The statute (§ 3, chap. 685, Laws of 1892) provides that, if the facts alleged in the affidavit of the freeholders be substantially proved, the costs incurred in the investigation shall be taxed by the justice and paid upon his order "by the officers whose expenditures are investigated." Guibord is and was, during the time of the expenditure complained of, and at the time of this investigation, president of the village.

The president of the village is a member of the board of trustees. (§ 1, tit. 4, chap, 322, Laws of 1890.)

It is also provided by section 5, same title, that the trustees shall have the management and control of the finances of the corporation.

That does not mean the trustees individually, but as a board, and of that board the president is one.

It is their management of the finances that has been investigated, and, in investigating their conduct as a board, the conduct of the president as a member of the board is necessarily involved.

APP. DIV.—VOL. XXVII.      47

It may be true that he has not personally paid out any of its money; that does not relieve him.

Greater responsibility, perhaps, rests upon the president than upon any other officer of the village for its expenditure. No bill can be paid by the treasurer, except after an audit by the board of trustees, of which board he is a part, and then only upon a draft drawn by the clerk and countersigned by the president; that is, it is verified and certified to the treasurer by the president; he is the last guard in the entry to the treasury.

The officers who incur the liability or who direct it to be paid, as well as the one who actually delivers the money in payment, are all parties to the expenditures, unless voting or protesting against them, and are "the officers whose expenditures are investigated" within the meaning of the statute.

It seems to me that there is every reason why the president should be charged, with the others, and none for his exemption.

I, therefore, conclude that the determination and findings of the justice, with the exception of those referring to the claims of $162 for drawing plans and specifications for a town hall, and of $223 compensation of attorneys for appearing before committees of the Legislature and the Governor, should be in all things approved, and the order entered thereon affirmed, with costs of this appeal against the appellants.

LANDON and PUTNAM, JJ., concurred; PARKER, P. J., and MERWIN, J., dissented.

MERWIN, J. (dissenting):

The question before us upon this appeal is not, I think, whether the opinion or report delivered in the proceeding was in all its statements or items correct, but the question is whether the order that was made was proper under the circumstances shown to exist.

The power of the justice to make any order is limited by the statute, and this limitation was evidently in mind when the order was made.

By the terms of the order the claim of the board of health for $3,510.35, which the board of trustees had ordered paid, was reduced by the sum of $105.50 for excessive and unlawful registration charges, and the payment of such $105.50 was restrained;

the payment of another portion of said claim, being an item of $1,552.88 for groceries furnished by H. W. Guibord, a member of the board of health, was restrained until the final determination of a trial of said claim upon the merits in some competent court; the treasurer of the village was restrained from the payment of any money raised for the current expenses of the year 1897 upon claims or indebtedness created in 1896 or for any prior years, and "from the payment of any warrant upon any fund after he has paid out the sum allotted by law or fixed by the Board of Trustees for such fund;" the board of trustees were restrained from allowing or directing paid from the village treasury any portion of the expenses of the proceeding. This is the substance of the order, aside from its provisions charging the officers individually with the costs and fixing the amount, and providing for the publication and service of the report.

The facts and circumstances that were shown justified, I think, the order and it should be affirmed.

PARKER, P. J., concurred.

Order modified as per opinion of HERRICK, J., and as modified affirmed, with costs of this appeal.