## VALENTINE v. ROBERTSON.

First Division.   Juneau.   February 9, 1924.

No. 2369–A.

**I. Municipal Corporations ☞880, 995(I)—Suits by Taxpayer.**

There is no question but that a taxpayer may enjoin the payment of moneys from the municipal treasury, where the same is about to be illegally appropriated by municipal authorities. Public moneys in the treasury of a municipal corporation are held in trust by the municipal authorities for the benefit of all the inhabitants thereof. The city council function as trustees, and the citizens of the town are cestui que trust, and a resident taxpayer may invoke the action of the court to prevent the misappropriation of municipal funds, or the illegal creation of a debt by the corporate authorities.

**2. Municipal Corporations ☞57—Powers:**

It is well settled that a municipal corporation has such powers and such only as (1) are expressly granted; (2) are fairly or necessarily implied from those granted; and (3) are essential to the declared objects or purposes of the incorporation.

**3. Contracts ☞126—Municipal Corporations ☞163—Lobbying Contracts Generally Void.**

An agreement to take charge of a claim before Congress and to prosecute it as agent or attorney for claimant by lobby purposes is void; but, where a city attorney of a municipal corporation is empowered to represent the municipality for public municipal purposes before Congress, the municipal corporation may pay his expenses.

**4. Municipal Corporations ☞163—Lobbying for Public Use Valid.**

Where it is necessary for the city of Juneau to construct permanent streets, and the city is unable, from its current revenues, to secure sufficient funds for that purpose, and it is necessary that legislation pending in Congress, authorizing the city to bond itself to erect and construct such streets, should be passed, and it further appears that the city attorney would not be benefited, and that he has no special interest in the construction of the permanent streets, then it is lawful for the town council to pay his expenses out of the town treasury to go to Washington and assist in securing the passage of such an act of Congress.

Reversed, Valentine v. Robertson (C. C. A.) 300 F. 521.

☞See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This action is before me on demurrers filed by the defendants against the amended complaint of plaintiff, and also a demurrer filed by the plaintiff to the affirmative answer of defendants, which affirmative answer was filed at the same time as defendants' demurrer to the complaint. By stipulation of counsel the demurrers were argued before the court at the same time. In order to get a full understanding of the litigation, it will be well to give a history of the same before considering the demurrers:

On January 28, 1924, Emory Valentine, for himself and other taxpayers of the city of Juneau, brought this action to restrain B. M. Behrends, as treasurer of the city, from paying out, and R. E. Robertson, defendant, from receiving, certain moneys alleged to have been appropriated by the city council of Juneau to pay the latter's traveling and subsistence expenses to Washington, D. C., and return, for the purpose of lobbying before Congress of the United States for the division of the territory of Alaska, the digging of the Hawk Inlet Canal and the Oliver Inlet Canal, and other similar lobbying work for other interested persons, corporations, and communities than Juneau, in the territory of Alaska; plaintiff alleging that the appropriation of said money was ultra vires, in violation of law, and beyond the power of the corporation. With the petition and affidavit, a motion for a restraining order, pendente lite, was submitted. Upon consideration of the motion and affidavit, an order was issued by the court restraining defendants as prayed for, subject to a motion to dissolve the same on one day's notice.

On January 29, an amended complaint was filed by the plaintiff, setting forth the appropriation by the city council of Juneau of the sum of $2,000 to defray the expenses of a competent person in going to Washington, D. C., for the purpose of lobbying before Congress in furtherance of the projects aforesaid, and the selection of the defendant Robertson as such person on January 18, the drawing of a warrant in his favor for $1,500, and the payment thereof by B. M. Behrends, the city treasurer—the said sum of $1,500 to be used by defendant Robertson as aforesaid, and the balance of the appropriation of $2,000 being subject to his order when required; and the amended complaint further alleged that all of such actions of the city council of Juneau were ultra vires, without authority

of law, and to the irreparable injury of plaintiff and the other taxpayers represented by him; that the common council and the other defendants were in collusion, and refused to take any action toward abrogating said contract or the recovery of the money paid, etc.

On reading the complaint, an amended temporary restraining order was thereupon issued, subject to dissolution on notice, which amended order continued the original restraining order in force, but added provision that the defendant Robertson be restrained from expending the sum of $1,500 then in his hands for the purpose alleged, and restraining the city, its officers, agents, and employees, from paying out any further sum for the purposes aforesaid.

On February 2, the defendants appeared and filed a demurrer to the amended complaint, and at the same time filed an answer under oath. The answer sets up an affirmative defense and to this affirmative defense the plaintiff has interposed a general demurrer. In each case the demurrer attacks the legal sufficiency of the complaint and the sufficiency of the affirmative defense, respectively.

The demurrers came on for argument on February 4. In the argument no specific or general defect in the complaint was pointed out by the defendants. The argument was almost wholly directed to the sufficiency of the allegations of the affirmative answer. However, as the action depends on the sufficiency of the complaint, and an attack on the sufficiency in law of an affirmative answer related back to and involves the validity of the complaint, a discussion of the legal sufficiency of such answer necessarily involves the sufficiency of the complaint. I have therefore considered the sufficiency of the complaint as against the general demurrer of the defendants, and am of the opinion that it states a good cause of action.

It alleges that the defendant is a taxpayer of the city of Juneau; that the defendant Behrends is treasurer and custodian of the public moneys of the city; that the common council appropriated the sum of $2,000 of the public moneys of the city to be paid to a competent person, to be by it selected, to compensate him and to defray his expenses to Washington, D. C., and return, to engage while there in lobbying before Congress, and presenting to Congress the desirability of the division of the territory of Alaska into two territories, the erec-

tion, of a government dock and building at Juneau, the dredging of Gastineau Channel, near Juneau, the digging of canals at Hawk Inlet and Oliver Inlet, the establishment of certain mail routes, the dredging of Wrangell Narrows, and other proposed matters not pertaining strictly to municipal government purposes; that the city council had selected the defendant R. E. Robertson as a suitable person to do the acts of lobbying for the purposes stated, and thereupon drew a warrant in favor of defendant Robertson for such purposes in the sum of $1,500, and that the treasurer paid out said sum to defendant Robertson, who now has the same in his possession; that the remainder of said sum of $2,000 remains in the custody of the treasurer, subject to the order of the said Robertson, and that the treasurer will pay the same out to the said Robertson upon the order of the mayor and city clerk, unless restrained; that the mayor and city council, who passed the ordinance appropriating said sum, are in collusion with the Treasurer Behrends, and refuse to take any action in the premises to recover said sum of money so paid out, or to prevent any further sum to be paid out by the said Behrends; that the appropriation for the purposes aforesaid are beyond the powers of the city council, being ultra vires and void, and the same, and the payments made thereunder, were and are in violation of law.

Wickersham & Kehoe, of Juneau, for plaintiff.
Hellenthal & Hellenthal, of Juneau, for defendant.

REED, District Judge. There is no question but that a taxpayer may enjoin the payment of moneys from the municipal treasury, where the same is about to be illegally appropriated by the municipal authorities. Public moneys in the treasury of a municipal corporation are held in trust by the municipal authorities for the benefit of all the inhabitants thereof. The city council function as trustees, and the citizens of the town are cestui que trust; and a resident taxpayer may invoke the action of the court to prevent the misappropriation of municipal funds, or the illegal creation of a debt by the corporate authorities. See Crampton v. Zabriskie, 101 U. S. 601, 25 L. Ed. 1070; Russell v. Tate, 52 Ark. 541, 13 S. W. 130, 7 L. R. A. 180, 20 Am. St. Rep. 193; McIntyre v. El Paso County, 15 Colo. App. 78, 61 P. 237; Linden Land Co. v. Milwaukee Elec. R. Co., 107 Wis. 493, 83 N. W. 851; 2 Dillon, Munici-

pal Corporations, pp. 915–919, and notes; 3 McQuillin, Municipal Corporations, § 2575; 19 Ruling Case Law, p. 1163.

The purposes alleged in the complaint for which defendant Robertson's expenses to Washington, D. C., are being paid by the city, are not, in my opinion, a public municipal purpose, for the reason that the same are all extraneous to the corporation. While they may be, in themselves, meritorious projects and for the public interest generally, yet they are not for the public municipal interest as defined by the authorities. There is a clear distinction between a general public interest in a matter and a municipal public interest.

If the prime measure or purpose of an appropriation is to subserve a public municipal purpose, it is immaterial if private interests are incidentally advantageously affected thereby; and so, if a private or other public interest, not directly pertaining to the corporation or within the powers of the corporation, is the primary object of the appropriation, it is not a public municipal purpose within the law. No one would contend that an appropriation by the city of Juneau to dredge Wrangell Narrows, or to dig the Hawk Inlet or Oliver Inlet canals, or any of the other purposes alleged in the complaint as purposes of the appropriation for which Mr. Robertson is to go to Washington, would be valid as a public municipal purpose; hence the expenses of a person lobbying for such objects could not be said to be incurred to promote a governmental municipal purpose.

It is well settled that a municipal corporation has such powers, and such only, as (1) are expressly granted; (2) are fairly or necessarily implied from those granted; (3) are essential to the declared objects or purposes of the incorporation.

As to the third, it is not enough that they be convenient, or general, or indirectly act for the advantage of the corporation. It must appear that they are indispensable to the purposes of the corporation, and, in case of doubt of the existence of the power of the corporation to make an appropriation, the same should be denied by the court. If the project or purpose for an appropriation is made under the pretense of actual authority, but intended to promote some unauthorized purpose, the courts will declare it illegal. If the primary object of a public expenditure is to subserve a public municipal purpose, the expenditure is legal, notwithstanding it also involves as an in-

cident an expense which, standing alone, would not be lawful; but, if the primary purpose of an appropriation is to promote some purpose not within any express or implied powers of a corporation, the expenditure would be illegal, even though it may incidentally serve some public purpose. See McQuillin on Municipal Corporations, vol. 5, par. 2165.

But the affirmative defense to which the demurrer of plaintiff is addressed alleges a different state of facts. It is alleged, in substance, that R. E. Robertson is the acting city attorney of the city; that the city is operating a municipal wharf as an aid to navigation, which greatly increases the business of the inhabitants of the city; that the city of Juneau is the owner of the streets of the city, and for a long time has maintained the streets by means of wooden planking at a great expense, but because of the increased traffic and the cost of labor and materials it has become impracticable so to maintain the streets, and that permanent streets will have to be built, necessitating a large expenditure of money, which the city is unable to do, unless empowered to issue bonds for such purpose, and it is necessary to have an authorization from Congress of the United States for the issuance of said bonds; that a bill for this purpose has been introduced and is now pending in the Congress of the United States, which, when it becomes a law, will authorize the city to issue bonds for that purpose, but that it is necessary for a person conversant with the facts to present the same to committees in Congress, and ask, in conjunction with the delegate, for the passage of such bill; that the citizens of Juneau and southeastern Alaska generally have been advocating the sending of a person to Washington to take up legislation in connection with the projects enumerated in the complaint of plaintiff; that the consummation of such projects would be of benefit to the city, and particularly in connection with its wharf facilities; that the citizens of other nearby communities had arranged to send a competent person to Washington to advocate the passage of such projects; that Mr. Robertson consented to act for the city in connection with the street improvement bonds, if the city would devote sufficient money to pay his expenses in going to Washington; that the said money was appropriated by the city council to pay the reasonable expenses of the said Robertson in connection with securing passage of the bill for the issuance of the bonds for street improvement purposes.

As against the demurrer, the facts alleged in the complaint must be taken as true. Boiled down, it appears from the answer that Mr. R. E. Robertson is city attorney, and as such acts in a legal advisory capacity to the city council. The answer further shows that it is necessary for the city council to provide funds for the construction of permanent streets; that under the bill now pending in Congress the city is authorized to bond itself for that purpose; and that the appropriation of the money, payment of which is sought to be enjoined hereby, is to pay his expenses in going to Washington, to lay before Congress the necessity for relief in that regard by the passage of the bill.

It cannot be denied that the improvement and construction of public streets of the city is one of its municipal functions, one which the city is bound, for the benefit of its inhabitants, to perform, and any act done towards that end comes strictly within a public municipal purpose. If, then, the primary purpose of the trip to Washington of Mr. Robertson is the purpose of securing authority to the city to improve or construct streets for the benefit of all the inhabitants of the municipality, and the appropriation was made so as to enable that purpose to be accomplished, it would, in my opinion, be a legitimate municipal purpose and come within the power of the common council of the corporation.

But it is urged that the services Mr. Robertson is to perform are merely lobbying services, and as such are against public policy and void, and that therefore the city is not empowered to expend any money for such purposes.

But not all contracts to expend moneys to persons to secure legislative action are void. Each case must depend upon the terms of the contract itself. The distinction is pointed out in Trist v. Child, 21 Wall. 441–445, 22 L. Ed. 623. The Supreme Court therein says that an agreement to take charge of a claim before Congress and to prosecute it as agent or attorney for claimant by lobby purposes is void, but that contracts for purely professional services, such as drafting petitions for an act, attending to the taking of testimony, preparing arguments, and submitting them to the committee or other proper authority, etc., are valid. But there is in this case a sufficient showing that the contract for the services of Mr. Robertson is not void under the authority of the Supreme Court. Mr. Robert-

son, according to the answer, is the acting city attorney and legal adviser of the city. He is not to receive any compensation, contingent or otherwise, for his services. He is not seeking to influence Congress for the private benefit of any person or class of persons. He will represent the municipal corporation for public municipal purposes. The nature of the relation and the power sought by the common council, as stated in the answer, is ample to repel the slightest suspicion of improper motives on their part or on the part of Mr. Robertson.

It, however, is urged, under the authority of Henderson et al. v. City of Covington, 14 Bush (Ky.) 313, that it is not within the corporate powers for the council to advance moneys for the purpose of sending any one to Washington to influence legislation, even though for municipal purposes. At first reading, this case would seem to hold squarely that it is not within the powers of the corporate council of the city of Covington to appropriate the revenue of the city to obtain an increase of the powers of the corporation through persons sent by the common council to appear before the state Legislature and Congress. The city council of Covington sought to increase the powers of the city, so as to authorize the city to build a bridge across the Ohio river from Covington, Ky., to Cincinnati, Ohio. A number of persons, not employees of the city, incurred expenses in going before the Legislature and Congress for that purpose, and sought reimbursement from the city council. The court therein found that to build a bridge across the Ohio river was not a part of the duty of the common council of Covington, nor was the legislation sought necessary to enable it to perform its corporate duties, or to accomplish the purpose for which the corporation was formed, and that, while it would be of great advantage to the city to have the bridge built by inviting population, enhancing the value of real estate, etc., it was not within the power of the city to appropriate money for the objects sought, as they were not necessary for the performance of its duty to its inhabitants or to accomplish its corporate purposes.

There is a broad distinction, however, between that case and the case at bar. According to the findings of the court, it was not necessary for the performance of the duty of the common council to its inhabitants, or to accomplish its corporate purposes, to build the bridge between the city of Covington and

the city of Cincinnati. If it was not within the corporate purposes to do so, then it was not within the powers of the common council of the city to appropriate moneys for any person to further that object. The appropriation also was sought by persons not members of the city council itself or employees of the city. In the case at bar, according to the allegations of the complaint, it is necessary for the carrying out of the purposes of the corporation that the powers of the city be increased, so as to afford safe and permanent streets for the city of Juneau, that additional legislation be had. Mr. Robertson is the representative of the city, and the purpose of the city in sending Mr. Robertson to Washington is that he advance and assist in securing legislation for purely municipal purposes.

In Meehan et al. v. Parsons et al., 271 Ill. 546, 111 N. E. 529, a question similar to the question in this case was directly raised before the court. There a bill was filed to enjoin the city from paying the necessary expenses of its mayor in representing the city before Congress to obtain an appropriation from the federal government of moneys for levees and embankments in and about the city of Cairo. It was alleged in the bill that the services rendered and expenses incurred were for lobbying, and that payment was illegal and unauthorized, because the city had no power to pay out moneys for such purposes as not being within the corporate purposes of the city. In his answer, Parsons alleged that during the summer of 1912 he had attended the sessions of Congress in the city of Washington to lobby for and obtain, if possible, an appropriation of money for levees and embankments in and about the city of Cairo. He alleged that the work was done on behalf of the city of Cairo itself, and at the instance and for the special benefit of said city; that his expenses were actual, reasonable, and necessary, being incurred by him in the accomplishment of the work; that he had never at any time asked for or demanded any compensation from the city for his time and services, and that it was necessary that the levees of the city of Cairo be raised and strengthened, and that it was impracticable to provide such funds from the city treasury without assistance from the general government.

The contention was made that it was contrary to public policy for the city to reimburse Parsons for expenses incurred

in securing the passage of an appropriation for repairing and strengthening the levees at the city of Cairo. The court say:

"Appellees cite a number of authorities under the propositions, first, that 'an agreement for compensation contingent upon obtaining legislation is void'; and, second, that 'a contract to promote the passing of laws and ordinances and paying expenses or compensation therefor is against public policy and cannot be enforced.' The first of these propositions is not applicable to the facts in this case, and the second proposition is not sustained by the authorities cited in support thereof. The cases cited by appellees do hold, and properly, that an agreement for compensation which is contingent upon obtaining certain legislation is void. No such situation is presented by the facts in this case. While appellants aver in their answer that Parsons attended upon the sessions of Congress in Washington at the instance of the city, it is nowhere alleged by appellees, or admitted by appellants, that Parsons was to receive any compensation contingent upon obtaining the desired legislation. On the contrary, it does definitely and clearly appear that Parsons is claiming only a portion of his proper, necessary and suitable expenses incurred in connection with the three trips he made to the city of Washington, and that he had no personal interest whatever in the outcome, and that personally he would neither be benefited nor damaged by any action which Congress might take in the matter. The courts have not gone so far as to hold that in no event and under no circumstances is it proper to interview and importune members of a legislative body to enact certain legislation in which the party importuning them may be interested. The interests of the city of Cairo would undoubtedly be affected by whatever action Congress should choose to take in reference to the appropriation for the building of its levees. Should Congress refuse to appropriate any sum whatever, the whole burden of building and maintaining its levees would rest upon the city. That burden would be lightened by whatever appropriation Congress should see fit to make. The city, therefore, had the undoubted right to authorize its chief executive to appear before the various congressional committees and interview the members of Congress to urge upon them the claims of the city and to advance any legitimate argument in favor of the passage of an appropriation bill for the relief of the city in this respect. Having the undoubted right to intercede with the members of Congress and to appear before its committees through its authorized agent, it must follow that the city undoubtedly would have the right to pay the necessary and legitimate expenses of its agent in presenting its claims to the members of Congress."

In the case at bar, it is alleged by the answer that it is necessary for the city to construct permanent streets, instead of the temporary plank streets which are now in the city; that the city is unable, from its current revenues or other reve-

nues, to secure sufficient funds to construct such streets; and that it is necessary that legislation pending in Congress, authorizing the city to bond itself to erect and construct such streets, should be passed. It further appears that Mr. Robertson would not be benefited, and that he has no special interest in the construction of the permanent streets, and the case is squarely within the clear and lucid reasoning of the last cited case of the Supreme Court of the State of Illinois. See, also, In re Taxpayers & Freeholders, 27 App. Div. 353, 50 N. Y. S. 357–366; Sun Printing & Pub. Ass'n v. City of New York, 152 N. Y. 257–265, 46 N. E. 499, 37 L. R. A. 788; Dillon, Municipal Corporations (4th Ed.) pars. 75, 76; Roberts v. State, 160 N. Y. 217, 54 N. E. 679.

The demurrer to the affirmative answer will therefore be overruled.